NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 220473-U

NO. 4-22-0473

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 9, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* R.R., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Adams County |
| Petitioner-Appellee, | ) | No. 19JA106 |
| v. | ) | |
| Camilla C., | ) | Honorable |
| Respondent-Appellant). | ) | Scott D. Larson, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Presiding Justice Knecht and Justice DeArmond concurred in the judgment.

**ORDER**

¶ 1       *Held*:  Respondent was not prejudiced by any improperly admitted hearsay evidence and
was not denied effective assistance of counsel by counsel's failure to object to the
hearsay evidence.  Moreover, the circuit court's findings respondent was unfit
and it was in the minor child's best interests to terminate respondent's parental
rights were not against the manifest weight of the evidence.

¶ 2       In January 2022, the State filed a motion for the termination of the parental rights

of respondent, Camilla C., as to her minor child, R.R. (born in September 2009), which the State

later supplemented.  In May 2022, the Adams County circuit court found respondent unfit as

alleged in the termination motion.  In a separate hearing on the same day, the court found it was

in R.R.'s best interests to terminate respondent's parental rights.

¶ 3       Respondent appeals, asserting (1) the circuit court erred by taking judicial notice

of the entire court file and for admitting the client service plans without proper foundation,

(2) the court erred by finding respondent unfit, (3) respondent was denied the effective assistance

of counsel, and (4) the court erred by concluding it was in R.R.'s best interests to terminate respondent's parental rights. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5            R.R.'s father is Reggie H., and he is not a party to this appeal. In December 2019, the State filed a petition for the adjudication of wardship of R.R. The petition asserted R.R. was a neglected minor for the following four reasons. First, on December 3, 2019, respondent brought R.R. to Blessing Hospital for a psychiatric evaluation. Respondent failed to cooperate with staff and left against advice with R.R. receiving no treatment. Second, R.R. had been diagnosed with oppositional defiant disorder and attention-deficit/hyperactivity disorder. He also had exhibited self-harm, such as head banging, in the past and was on medication for the disorders. Third, on December 4, 2019, respondent failed to cooperate with an investigator from the Department of Children and Family Services (DCFS) and threatened the investigator with a metal shovel. Later that day, respondent was arrested for methamphetamine delivery in Adams County case No. 19-CF-993. Fourth, on December 20, 2019, R.R. was out of control at school and was engaging in head banging and self-harm. R.R. was taken to Blessing Hospital. Respondent refused to cooperate with R.R.'s admission, which was medically necessary. After an October 14, 2020, hearing, the circuit court concluded R.R. was neglected. On November 4, 2020, the court held the dispositional hearing. After hearing the evidence and the parties' arguments, the court entered a written dispositional order (1) finding respondent unfit and unable to care for R.R., (2) making R.R. a ward of the court, and (3) placing R.R.'s custody and guardianship with DCFS.

¶ 6            Respondent appealed, asserting the circuit court erred by finding R.R. neglected. This court affirmed the circuit court's judgment. *In re R.R.*, 2021 IL App (4th) 200563-U.

¶ 7          In January 2022, the State filed a motion to terminate respondent's and Reggie H.'s parental rights to R.R.  As to respondent, the motion asserted respondent was unfit because she failed to make (1) reasonable efforts to correct the conditions that were the basis for R.R.'s removal during any nine-month period after the neglect adjudication (750 ILCS 50/1(D)(m)(i) (West Supp. 2021)) and (2) reasonable progress toward R.R.'s return during any nine-month period after the neglect adjudication (750 ILCS 50/1(D)(m)(ii) (West Supp. 2021)).  Both counts alleged the same three nine-month periods of October 14, 2020, to July 13, 2021; July 14, 2021, to April 13, 2022; and "April 13, 2022 to January 13, 2023."

¶ 8          On May 26, 2022, the circuit court commenced the fitness hearing.  The State first asked the court to take judicial notice of all the court records in this case, "including all court orders, all written progress reports by service providers and all service plans previously filed with the court."  The court took "judicial notice of its own records in the file."  The State then offered State's exhibit No. 1, R.R.'s birth certificate, which the court admitted without objection.  Next, the State offered a certified copy of respondent's convictions for methamphetamine delivery and intimidation in Adams County case No. 19-CF-993 (State's exhibit No. 2).  The documents from case No. 19-CF-993 showed respondent committed the crimes in December 2019 and was sentenced to concurrent prison terms of four years for the crimes in November 2021.  The court admitted the certified copy of the convictions.  The State then presented the testimony of Zoe Elder, a child welfare specialist with Chaddock, a service agency.

¶ 9          Elder testified Chaddock received this case from another agency in August 2021, and at first, Elder just assisted Delaney McDonald with the case.  Chaddock did receive a file from the prior agency, which included a certificate showing respondent completed parenting classes.  Elder became the caseworker for R.R.'s case in October 2021.  Elder created the

November 2021 service plan, which also evaluated the prior plan. Respondent received a rating of unsatisfactory for parenting and well-being because the circuit court had suspended her visitation with R.R. and respondent had recently been sentenced to the Department of Corrections (DOC). Respondent also received an unsatisfactory rating for cooperation because respondent did not cooperate with the prior caseworker and refused to provide documentation of employment during the reporting period. Elder rated respondent unsatisfactory for mental health because respondent had not completed a mental-health assessment or did not provide documentation if she had done so. Last, respondent also received an unsatisfactory rating for substance-free lifestyle because she did not provide documentation of participation in a substance-abuse program and self-reported she had not been engaged in substance-abuse services for the two months prior to the November 2021 evaluation. Respondent had completed two drug drops, one in September 2021 and one in October 2021. Both of the drops were negative.

¶ 10 Elder further testified that, since respondent was incarcerated at the time of the creation of the November 2021 service plan, respondent received an incarcerated parent task, which required respondent to complete alcohol and drug treatment programs if they were available to her, attend mental-health services, attend domestic-violence services, and follow her court orders. Elder had not received any documentation respondent was participating in such services. While respondent's visitation with R.R. had been suspended since March 2021, respondent was allowed to write R.R. letters. The letters were to be sent to Elder, who approved them before giving them to R.R. Since respondent has been in DOC, respondent wrote R.R. two to three times a month. Elder testified the letters have been very appropriate. Respondent did receive one visit with R.R. to let R.R. know his brother passed away. Elder testified the visit went well. However, Elder opined respondent had not made any progress towards the return

home of R.R.

¶ 11    Additionally, the State sought admission of the June 2021 service plan (State's exhibit No. 3) drafted by the previous agency and the November 2021 service plan (State's exhibit No. 4) drafted by Elder. Elder testified the service plans are made, evaluated, and maintained in the regular course of her business. She also testified she believed the records were accurate. Respondent's counsel did not object to the admission of the two service plans, and the circuit court admitted them.

¶ 12    Respondent did not present any evidence. After hearing the parties' arguments, the circuit court found the allegations of unfitness against respondent had been proven by clear and convincing evidence for the nine-month periods set forth by the State. The court later clarified it was only finding respondent unfit for the first two nine-month periods. The court also found Reggie H. unfit. It then proceeded to the best-interests hearing.

¶ 13    Elder testified R.R. was currently 12 years old and had been in his foster mother's home for two years. R.R. had attention-deficient/hyperactivity disorder. His foster mother was a licensed specialized foster parent, which meant she had special training and experience with children who have special needs. Elder personally monitored R.R.'s placement three times a month. R.R. was bonded with his foster mother and really enjoyed living with her. According to Elder, R.R. seemed comfortable in the home. R.R.'s foster mother had been "cooperative" with R.R.'s educational services, made sure R.R. received his prescribed medication, and assured R.R. attended his medical appointments. R.R. has expressed he wanted to continue living with his foster mother. The foster mother had signed a permanency commitment for R.R. and desired to adopt him. In Elder's opinion, R.R. being adopted by his foster mother was in R.R.'s best interests.

¶ 14      After hearing the parties' arguments, the circuit court found it was in R.R.'s best interests to terminate respondent's parental rights. It also concluded it was in R.R.'s best interests to terminate Reggie H.'s parental rights. On May 26, 2022, the court entered a written termination order. That same day, respondent filed a timely notice of appeal in sufficient compliance with Illinois Supreme Court Rule 303 (eff. July 1, 2017). See Ill. S. Ct. R. 660(b) (eff. Oct. 1, 2001) (providing the rules governing civil cases also govern appeals from final judgments in all proceedings under the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2020)), except for delinquency cases). Thus, this court has jurisdiction of the appeal pursuant to Illinois Supreme Court Rule 307(a)(6) (eff. Nov. 1, 2017). The circuit court appointed respondent counsel for her appeal.

On appeal, respondent's counsel filed a motion to withdraw as counsel and a brief in compliance with *Anders v. California*, 386 U.S. 738 (1967). See *In re J.P.*, 2016 IL App (1st) 161518, ¶ 8, 65 N.E.3d 1009 (finding *Anders* applies when counsel seeks to withdraw from representation on direct appeal from orders affecting parental rights under the Juvenile Court Act). This court granted the motion to withdraw as counsel and directed the circuit court to appoint respondent new counsel. *In re R.R.*, No. 4-22-0473 (Sept. 2, 2022) (motion order). Once the circuit court appointed respondent new counsel, this court instituted a new briefing schedule. The new briefing schedule resulted in the reply brief being due after the 150-day deadline established by Illinois Supreme Court Rule 311(a)(5) (eff. July 1, 2018), by which this court is to issue its decision. That rule does have a good-cause exception, which we find applicable in this case. Ill. S. Ct. R. 311(a)(5) (eff. July 1, 2018).

¶ 15                                    II. ANALYSIS

¶ 16      Under section 2-29(2) of the Juvenile Court Act (705 ILCS 405/2-29(2) (West

- 6 -

2020)), the involuntary termination of parental rights involves a two-step process. First, the State must prove by clear and convincing evidence the parent is "unfit," as that term is defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West Supp. 2021)). *In re Donald A.G.*, 221 Ill. 2d 234, 244, 850 N.E.2d 172, 177 (2006). If the circuit court makes a finding of unfitness, then the State must prove by a preponderance of the evidence it is in the minor child's best interests that parental rights be terminated. *In re D.T.*, 212 Ill. 2d 347, 366, 818 N.E.2d 1214, 1228 (2004).

¶ 17        Since the circuit court has the best opportunity to observe the demeanor and conduct of the parties and witnesses, it is in the best position to determine the credibility and weight of the witnesses' testimony. *In re E.S.*, 324 Ill. App. 3d 661, 667, 756 N.E.2d 422, 427 (2001). Further, in matters involving minors, the circuit court receives broad discretion and great deference. *E.S.*, 324 Ill. App. 3d at 667, 756 N.E.2d at 427. Thus, a reviewing court will not disturb a circuit court's unfitness finding and best-interests determination unless they are contrary to the manifest weight of the evidence. See *In re Gwynne P.*, 215 Ill. 2d 340, 354, 830 N.E.2d 508, 516-17 (2005) (fitness finding); *In re J.L.*, 236 Ill. 2d 329, 344, 924 N.E.2d 961, 970 (2010) (best-interests determination). A circuit court's decision is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Gwynne P.*, 215 Ill. 2d at 354, 830 N.E.2d at 517.

¶ 18                    A. Evidentiary Issues at the Fitness Hearing

¶ 19        In proceedings for the termination of parental rights, this court reviews a circuit court's admission or denial of evidence for an abuse of discretion. *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1072, 859 N.E.2d 123, 141 (2006). An abuse of discretion occurs when the circuit court's ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would

take the view adopted by the circuit court. *In re Ca. B.*, 2019 IL App (1st) 181024, ¶ 62, 143 N.E.3d 680.

¶ 20                                              1. *Judicial Notice*

¶ 21          Respondent first contends the circuit court erred when it took judicial notice of the entire court file in this case. The State notes defendant has forfeited this matter by not raising an objection at the hearing and in a posthearing motion. See *In re N.T.*, 2015 IL App (1st) 142391, ¶ 41, 31 N.E.3d 254. However, the circuit court did not give respondent an opportunity to respond to the request for judicial notice. We note the application of the forfeiture rule is less rigid when the basis of the objection is the circuit court's conduct. *N.T.*, 2015 IL App (1st) 142391, ¶ 41. The State acknowledges taking judicial notice of the entire court file was improper but asserts respondent was not prejudiced by the circuit court's action.

¶ 22          In this case, the State asked the circuit court to take judicial notice of all the court records in this case. The circuit court noted it was taking judicial notice of "all court orders, all written progress reports by service providers and all service plans previously filed with the court." In ruling on the issue of unfitness, the circuit court noted it "had the opportunity to review the file."

¶ 23          In *In re J.G.*, 298 Ill. App. 3d 617, 628-29, 699 N.E.2d 167, 175 (1998), this court addressed judicial notice at the unfitness hearing in a termination of parental rights proceedings. We began by recognizing judicial notice of certain facts was often necessary at such hearings. *J.G.*, 298 Ill. App. 3d at 628, 699 N.E.2d at 175. However, this court found the "wholesale judicial notice of everything that took place prior to the unfitness hearing is unnecessary and inappropriate." *J.G.*, 298 Ill. App. 3d at 629, 699 N.E.2d at 175. We noted the rules of evidence in civil cases apply to adjudicatory hearings under the Juvenile Court Act (705 ILCS 405/2-18(1)

(West 1996)), with a limited exception for hearsay that is contained in section 2-18(4)(a) of the Juvenile Court Act (705 ILCS 405/2-18(4)(a) (West 1996)). *J.G.*, 298 Ill. App. 3d at 629, 699 N.E.2d at 175. Section 2-18(4)(a) provides for the admission of agency service plans if the provision's foundational requirements are satisfied. See *In re Z.J.*, 2020 IL App (2d) 190824, ¶ 66, 168 N.E.3d 210. Additionally, this court concluded that, while the circuit court erred in taking judicial notice of the entire court file, the respondent was not prejudiced by that error because there was more than sufficient evidence of the respondent's unfitness properly admitted at the hearing to meet the State's burden of clear and convincing evidence. *J.G.*, 298 Ill. App. 3d at 629, 699 N.E.2d at 176.

¶ 24    As in *J.G.*, the circuit court erred by taking judicial notice of the entire court file in this case. However, as explained later in our analysis, we find respondent was not prejudiced by the error because the properly admitted evidence was sufficient to establish respondent's unfitness by clear and convincing evidence.

¶ 25                    2. *Service Plans*

¶ 26    Respondent also contends the circuit court erred by admitting the June 2021 and November 2021 service plans without a proper foundation. The State asserts respondent has forfeited this issue by not objecting to the admission of the service plans. Unlike judicial notice, respondent's counsel was asked if he had an objection to the admission of the service plans, and counsel did not object to any contents of the plans that apply to the nine-month periods alleged by the State. Regardless, even if the foundation was not properly laid for the two service plans, respondent was not prejudiced by the error because, as explained in the next section, the properly admitted evidence was sufficient to establish respondent's unfitness by clear and convincing evidence.

- 9 -

¶ 27                                    B. Respondent's Fitness

¶ 28        Respondent contends the State's properly admitted evidence was insufficient to prove her unfitness by clear and convincing evidence. The State disagrees.

¶ 29        In this case, the circuit court found respondent unfit on two grounds alleged in the petition for two nine-month periods. One of the bases for the circuit court's unfitness finding was section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West Supp. 2021)), which provides a parent may be declared unfit if he or she fails "to make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected or abused minor under Section 2-3 of the Juvenile Court Act." Illinois courts have defined "reasonable progress" as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046, 871 N.E.2d 835, 844 (2007). Moreover, they have explained reasonable progress as follows:

> " '[T]he benchmark for measuring a parent's "progress toward the return of the child" under section 1(D)(m) of the Adoption Act encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later became known and which would prevent the court from returning custody of the child to the parent.' " *Reiny S.*, 374 Ill. App. 3d at 1046, 871 N.E.2d at 844 (quoting *In re C.N.*, 196 Ill. 2d 181, 216-17, 752 N.E.2d 1030, 1050 (2001)).

Additionally, this court has explained reasonable progress exists when a circuit court "can conclude that *** the court, in the *near future*, will be able to order the child returned to parental

custody. The court will be able to order the child returned to parental custody in the near future because, at that point, the parent *will have fully complied* with the directives previously given to the parent in order to regain custody of the child." (Emphases in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461, 577 N.E.2d 1375, 1387 (1991). We have also emphasized " 'reasonable progress' is an 'objective standard.' " *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88, 19 N.E.3d 227 (quoting *L.L.S.*, 218 Ill. App. 3d at 461, 577 N.E.2d at 1387).

¶ 30 In determining a parent's fitness based on reasonable progress, a court may only consider evidence from the relevant time period. *Reiny S.*, 374 Ill. App. 3d at 1046, 871 N.E.2d at 844 (citing *In re D.F.*, 208 Ill. 2d 223, 237-38, 802 N.E.2d 800, 809 (2003)). Courts are limited to that period "because reliance upon evidence of any subsequent time period could improperly allow a parent to circumvent her own unfitness because of a bureaucratic delay in bringing her case to trial." *Reiny S.*, 374 Ill. App. 3d at 1046, 871 N.E.2d at 844. In this case, the petition alleged three nine-month periods, but we will address the period of July 14, 2021, to April 13, 2022. Additionally, our supreme court has held time spent in prison does not toll the nine-month period. *J.L.*, 236 Ill. 2d at 341, 924 N.E.2d at 968.

¶ 31 The properly admitted evidence showed respondent did not make substantial progress towards R.R.'s return and she was never close to R.R. returning to her custody. The circuit court's March 17, 2021, docket entry stated, "Visits w/Mother are suspended." The State's exhibit No. 2 showed respondent was sentenced to DOC on November 4, 2021. Elder, the State's sole witness, was either shadowing the caseworker or the caseworker in this case for most of the relevant nine-month period (August 2021 to April 13, 2022). Elder testified respondent had refused to provide proof of employment for the November 2021 evaluation. Respondent's incarceration then impeded her ability to maintain employment. Elder also

testified respondent never provided documentation of mental-health and substance-abuse assessments. While respondent contends it was a lack of verification on the agency's part, respondent self-reported she was not attending mental-health services and Alcoholics Anonymous meetings for the two months before the November 2021 evaluation. Moreover, Elder testified respondent never provided her documentation respondent was obtaining any services while in DOC. While respondent had completed a parenting class, had two negative drug drops, and kept in contact with R.R. via letters during the relevant nine-month period, respondent's actions were not demonstrable movement toward the return of R.R.

¶ 32            Since we have upheld the circuit court's determination respondent met the statutory definition of an "unfit person" on the basis of respondent's failure to make reasonable progress (750 ILCS 50/1(D)(m)(ii) (West Supp. 2021)) during the nine-month period of July 14, 2021, to April 13, 2022, we do not address the other bases for the circuit court's unfitness finding. See *In re Tiffany M.*, 353 Ill. App. 3d 883, 891, 819 N.E.2d 813, 820 (2004).

¶ 33                        C. Ineffective Assistance of Counsel

¶ 34            Respondent contends she received ineffective assistance of counsel because counsel failed to object to hearsay evidence and evidence that lacked foundation. The State disagrees.

¶ 35            This court analyzes ineffective assistance of counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *In re C.C.*, 368 Ill. App. 3d 744, 748, 859 N.E.2d 170, 173 (2006). To obtain reversal under *Strickland*, a defendant must prove (1) his or her counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient performance resulted in prejudice to the defendant. *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999). With the deficiency prong, the defendant must

overcome the strong presumption the challenged action or inaction could have been the product of sound trial strategy. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163; *C.C.*, 368 Ill. App. 3d at 747-48, 859 N.E.2d at 172. To satisfy the prejudice prong, the defendant must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceeding's result would have been different. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64. The *Strickland* Court noted a case should be decided on the ground of lack of sufficient prejudice rather than counsel's constitutionally deficient representation if it is easier to do so. *Strickland*, 466 U.S. at 697.

¶ 36    Here, respondent has failed to establish the prejudice prong. As we explained with the evidentiary issues in this appeal, the properly admitted evidence was sufficient to prove one ground of unfitness by clear and convincing evidence. Thus, we disagree with respondent the circuit court's unfitness finding would have been different if counsel had objected to the hearsay evidence. Accordingly, we do not find respondent received ineffective assistance of counsel.

¶ 37                          D. R.R.'s Best Interests

¶ 38    Respondent also challenges the circuit court's finding it was in R.R.'s best interests to terminate her parental rights. The State disagrees and contends the court's finding was proper.

¶ 39    During the best-interests hearing, the circuit court focuses on "the child's welfare and whether termination would improve the child's future financial, social and emotional atmosphere." *In re D.M.*, 336 Ill. App. 3d 766, 772, 784 N.E.2d 304, 309 (2002). In doing so, the court considers the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West Supp. 2021)) in the context of the child's age and developmental needs.

- 13 -

See *In re T.A.*, 359 Ill. App. 3d 953, 959-60, 835 N.E.2d 908, 912-13 (2005). Those factors include the following: the child's physical safety and welfare; the development of the child's identity; the child's family, cultural, and religious background and ties; the child's sense of attachments, including continuity of affection for the child, the child's feelings of love, being valued, security, and familiarity, and taking into account the least disruptive placement for the child; the child's own wishes and long-term goals; the child's community ties, including church, school, and friends; the child's need for permanence, which includes the child's need for stability and continuity of relationships with parent figures, siblings, and other relatives; the uniqueness of every family and each child; the risks attendant to entering and being in substitute care; and the wishes of the persons available to care for the child. 705 ILCS 405/1-3(4.05) (West Supp. 2021).

¶ 40 We note a parent's unfitness to have custody of his or her child does not automatically result in the termination of the parent's legal relationship with the child. *In re M.F.*, 326 Ill. App. 3d 1110, 1115, 762 N.E.2d 701, 706 (2002). As stated, the State must prove by a preponderance of the evidence the termination of parental rights is in the minor child's best interests. See *D.T.*, 212 Ill. 2d at 366, 818 N.E.2d at 1228. "Proof by a preponderance of the evidence means that the fact at issue *** is rendered more likely than not." *People v. Houar*, 365 Ill. App. 3d 682, 686, 850 N.E.2d 327, 331 (2006).

¶ 41 In this case, the evidence showed R.R. had lived with his foster mother for two years. Since March 17, 2021, respondent and R.R. had only one visit, at which respondent informed him of the death of his brother. R.R. was bonded with his foster mother, who met his special needs. Elder testified that, while R.R. was a handful initially in the foster home, he had become comfortable in the home and enjoyed living there. According to Elder, R.R.'s behaviors

- 14 -

had improved while living with his foster mother. The foster mother desired to provide R.R. permanency through adoption, and R.R. wanted to continue living with his foster mother. While the circuit court emphasized one factor, an overwhelming majority of the best-interests factors favored the termination of respondent's parental rights.

¶ 42        Accordingly, we find the circuit court's conclusion it was in R.R.'s best interests to terminate respondent's parental rights was not against the manifest weight of the evidence.

¶ 43                                III. CONCLUSION

¶ 44        For the reasons stated, we affirm the Adams County circuit court's judgment.

¶ 45        Affirmed.