**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 210106-U

Order filed November 18, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0106 Circuit No. 14-CF-546 |
| TRAVIEN K. MOORE, | ) ) ) | Honorable Clark E. Erickson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justices Daugherity and Hettel concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The court did not err by dismissing defendant's postconviction petition at the first stage.

¶ 2     Defendant, Travien K. Moore, appeals from the first-stage dismissal of his postconviction petition. Defendant argues that he stated the gist of a claim for ineffective assistance of counsel due to the failure to call his mother, Twilla Thomas, as an alibi witness. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4          The State charged defendant by way of a 15-count indictment with, as relevant here, multiple counts of aggravated criminal sexual assault (720 ILCS 5/11-1.30(a)(2), (3), (5) (West 2014)) and one count each of aggravated unlawful restraint (*id.* § 10-3.1) and aggravated battery (*id.* § 12-3.05(a)(5)). Defendant was appointed counsel to represent him. The case proceeded to a jury trial.

¶ 5          The victim testified that she was visiting a relative and left at approximately 4:30 p.m. to return home. When she arrived home, she encountered a man in her house. The victim described the man as wearing dark brown gloves, black pants, a black hooded sweatshirt, and a black stocking cap with makeshift eye slits. She stated the man was black and estimated he was approximately five feet, eleven inches tall and weighed 210 pounds. The man placed his penis in her mouth and vagina. When the man left, the victim was lying on the ground, bound with duct tape. She screamed for her neighbor.

¶ 6          Between 5:30 and 5:45 p.m., the victim's neighbor heard her screaming. He went to her residence and found the victim lying on the floor undressed, with her hands and ankles bound with duct tape.

¶ 7          A sexual assault examination was conducted, and semen was recovered from the vaginal swab. DNA analysis of the swab indicated the presence of a female DNA profile, which matched the victim, and a male DNA profile. The male profile was compared with DNA in a database of known profiles and led to a preliminary match with defendant. A buccal swab from defendant was also analyzed. The DNA profile resulting from the buccal swab matched the male DNA profile from the vaginal swab at all 15 loci tested. The DNA evaluation indicated that the male DNA profile identified in the vaginal swab "would be expected to occur in approximately 1 in 25

quintillion black [individuals], one in 21 sextillion southwest Hispanic [individuals], [and] one in 780 quintillion white unrelated individuals." The victim testified that prior to the attack, she was not in a sexual relationship with defendant and had never seen him before.

¶ 8        The police searched a residence where they believed defendant was staying, which was approximately 3½ blocks from the victim's residence. Defendant was present at the address when they entered and they found mail addressed to him at that residence. An officer testified that, as they were escorting defendant from the residence, he asked them to retrieve money from a jacket. In that jacket, they located a black stocking cap with makeshift eye slits and gloves. The officers also recovered a black hooded sweatshirt and two pairs of black pants. The victim testified that the stocking cap was the same one her assailant wore and that the rest of the clothing looked the same as what her assailant wore at the time of the attack.

¶ 9        An officer testified that the arrest sheet for defendant listed his height as five feet, eleven inches tall and his weight as 220 pounds. It also listed the searched address as defendant's home address. That information was supplied by defendant.

¶ 10        The jury found defendant guilty of aggravated criminal sexual assault, unlawful restraint, and aggravated battery. The court sentenced defendant to a total of 105 years' imprisonment.

¶ 11        Defendant filed a motion for new trial arguing his counsel was ineffective which was denied after a preliminary *Krankel* hearing. Defendant then filed a motion for reconsideration asserting additional allegations of ineffective assistance of counsel. The additional allegations included an argument that counsel was ineffective for failing to call witnesses to testify that the clothing admitted into evidence was not defendant's and for failing to call his "most important witness" as an alibi witness. Defendant did not name the witness. The court conducted another

3

preliminary *Krankel* hearing. Counsel told the court that she spoke with Thomas on more than one occasion,

> "but basically it was to get her—it was more for an alibi situation because of when [defendant] had gotten home that night, what she did that night, and what her husband, [defendant's] stepfather, had done that night *** or afternoon.
>
> Those were the *** focus of my conversations with *** Thomas was to determine if she could be used and whether the stepfather could be used as an alibi witness. I actually did not have either of them lined up specifically for the clothing issue."

The court did not find that defendant raised an issue that would merit the appointment of independent counsel.

¶ 12　　　　Defendant appealed, arguing the court erred by denying his request for a continuance, raising issues of prosecutorial misconduct, and challenging his sentence. He did not challenge the court's ineffective assistance of counsel decision. This court affirmed. *People v. Moore*, 2019 IL App (3d) 160355-U.

¶ 13　　　　Defendant, as a self-represented litigant, filed a postconviction petition. He argued, among other things, that counsel provided ineffective assistance by failing to call his alibi witness, Thomas, who saw him at home at the time the attack occurred. He attached an affidavit from Thomas indicating various times on the day of the attack that she witnessed defendant at home, including 4:40 and 5:45 p.m. Thomas further attested that counsel told her she would call her to testify, but she did not. The court dismissed the petition at the first stage. Defendant appeals.

4

¶ 14                                    II. ANALYSIS

¶ 15        Defendant argues that his postconviction petition stated the gist of a claim for ineffective assistance of counsel based on counsel's failure to call Thomas as an alibi witness.

¶ 16        The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)) provides a process for a criminal defendant to assert that his conviction resulted from a substantial denial of his rights under the United States Constitution, the Illinois Constitution, or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). Defendant need only state the "gist" of a constitutional claim at the first stage. *Id.* The petition may be summarily dismissed at the first stage of proceedings if it is frivolous or patently without merit, such that it "has no arguable basis either in law or in fact." *Id.* at 16. But the petition must "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122-2 (West 2018). "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Hodges*, 234 Ill. 2d at 16. "Meritless legal theories include those theories that are completely contradicted by the record." *People v. Boykins*, 2017 IL 121365, ¶ 9. Additionally, "where *res judicata* and forfeiture preclude a defendant from obtaining relief, such a claim is necessarily 'frivolous' or 'patently without merit.' " *People v. Blair*, 215 Ill. 2d 427, 445 (2005).

¶ 17        Initially, we note that defendant raised a claim of ineffective assistance of counsel due to the failure to call an alibi witness in his motion for new trial. The court heard the claim at a preliminary *Krankel* hearing and deemed it meritless. Defendant failed to challenge that ruling on direct appeal and this claim is forfeited. See *People v. English*, 2013 IL 112890, ¶ 22 (stating that "issues that could have been raised on direct appeal, but were not, are forfeited").

5

¶ 18    Even if the claim is not forfeited because defendant did not explicitly argue Thomas was his alibi witness or have an affidavit from her in his motion for new trial, the court's dismissal was proper. For an ineffective assistance of counsel claim to survive first-stage dismissal, defendant must show that "(i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17. "[I]f the ineffective-assistance claim can be disposed of on the ground that the defendant did not suffer prejudice, a court need not decide whether counsel's performance was constitutionally deficient." *People v. Evans*, 186 Ill. 2d 83, 94 (1999).

¶ 19    Here, it is not arguable that defendant was prejudiced by the failure to call Thomas as an alibi witness. The victim was sexually assaulted and testified that her assailant placed his penis in her vagina. Defendant's semen was found in the victim's vagina. The victim testified she had never seen defendant previously and did not have a sexual relationship with him. There was no evidence contradicting her testimony or providing any explanation of how defendant's semen could have been located in her vagina if defendant was not the assailant. Moreover, clothing fitting the description of what the assailant wore was found in defendant's residence, including the black stocking cap with makeshift eye slits. Additionally, defendant matched the height, weight, and race description of the assailant. Further, the time given by the victim was not exact, Thomas's affidavit does not explicitly state defendant was home the entire time frame of the attack, rather it states he was there at 4:40 and 5:45 p.m., and defendant only lived 3½ blocks from the victim. Even accepting the allegations in Thomas's affidavit as true, it would not necessarily provide defendant an alibi.

¶ 20    In sum, the court did not err in dismissing defendant's postconviction petition because defendant failed to make an arguable showing of prejudice. That is, it is not arguable that had counsel called Thomas as an alibi witness the outcome of the trial would have been different.

¶ 21                                    III. CONCLUSION

¶ 22    The judgment of the circuit court of Kankakee County is affirmed.

¶ 23    Affirmed.