NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230122-U

NO. 4-23-0122

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 28, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* K.W., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Winnebago County |
| Petitioner-Appellee, | ) | No. 21JA278 |
| v. | ) | |
| Moses W., | ) | Honorable |
| Respondent-Appellant). | ) | Francis M. Martinez, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Knecht and Turner concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Respondent has failed to show prejudice from any of his attorneys' allegedly
unreasonable acts or omissions and has therefore failed to show he received
ineffective assistance of counsel.

¶ 2        In February 2023, the trial court entered an order terminating the parental rights of

Moses W. and Lashana P., the parents of K.W. (born July 2021). Respondent, Moses W., appeals,

arguing only that he received ineffective assistance of counsel at several stages of the proceedings.

(Because Lashana P.'s appeal is addressed in appellate court case No. 4-23-0097, this order is

limited to addressing respondent's contentions on appeal.)

¶ 3                      I. BACKGROUND

¶ 4                   A. The Neglect Petition

¶ 5 In July 2021, the State filed a petition seeking an adjudication that K.W. was a neglected minor under the provisions of section 2-3(1)(b) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(b) (West 2020)) in that Lashana P. failed to cure the conditions that brought K.W.'s siblings into care, thereby placing K.W. at risk of harm.

¶ 6 On July 22, 2021, the trial court held a shelter care hearing to determine whether probable cause existed to believe K.W. was abused, neglected, or dependent. See 705 ILCS 405/2-10(2) (West 2020). During the hearing, respondent advised that he lived in Chicago. The court appointed Collin Evans to represent respondent and another attorney to represent Lashana P. After the court explained the structure of the proceedings, both attorneys met with their new clients. Immediately thereafter, respondent and Lashana P. both chose to waive their right to a hearing. The court entered an order finding that probable cause existed to believe that K.W. was neglected and that it was "a matter of urgent and immediate necessity" that she be placed in shelter care.

¶ 7 At an October 2021, evidentiary hearing on the neglect petition, Michelle French, of the non-profit care agency Shelter, Inc., testified she was the caseworker for K.W. and Lashana P.'s three other minor children, all of whom were in court-ordered care. The Department of Children and Family Services (DCFS) took the oldest, a five-year-old, into care at birth because of the death of an older sibling. DCFS took Lashana P.'s later-born children into care because Lashana P. had not cured the conditions that had resulted in the older child's removal. Lashana P. had engaged in some, but not all, of the services recommended under the service plan and had ceased engaging in some of those services prematurely. French testified that the goal for the older children was substitute care pending a ruling on termination of parental rights. DCFS had placed K.W. in Cook County with one of her older siblings.

¶ 8　　　　　Blake Box, a DCFS investigator, testified she met with Lashana P. in the hospital just after K.W. was born. The hospital contacted DCFS because Lashana P. had cesarean section scars but initially denied having other children. Further, when questioned about the scars, Lashana P. stated she had six other children who were not in her care. DCFS records showed that Lashana P. had not completed the services recommended when her older children were taken into care. DCFS therefore took K.W. into protective custody.

¶ 9　　　　　Lashana P. testified that she had completed the recommended services. She believed her visits with K.W. were going well. She stated she had received Social Security disability payments but was not sure what her qualifying disability was. She no longer received those payments, but she did not know why they had ended.

¶ 10　　　　In December 2021, the trial court adjudicated K.W. a neglected minor. Both respondent and Lashana P. declined to contest the finding. In deeming K.W. neglected, the court concluded that Lashana P. had failed to comply with the service plans developed for the older children and that she thus had failed to correct the conditions that put K.W. at risk of harm. The court stated it could tell from Lashana P.'s testimony she was "unaware of her present circumstances." The court made K.W. a ward of the court and granted custody and guardianship to DCFS. The court ordered respondent and Lashana P. to cooperate with DCFS and comply with specific terms as directed by DCFS.

¶ 11　　　　　　　　　　　　　B. Termination Proceedings

¶ 12　　　　In November 2022, the State filed a petition to terminate Lashana P.'s and respondent's parental rights. As amended, the petition alleged that respondent was unfit in the following four counts: (count I) Failure to maintain a reasonable degree of interest, concern, or responsibility for K.W.'s welfare (750 ILCS 50/1(D)(b) (West 2020)); (count II) Failure to protect

K.W. from conditions within the environment injurious to her welfare (750 ILCS 50/1(D)(g) (West 2020)); (count III) Failure to make reasonable efforts to correct the conditions that were the basis for the removal of K.W. during a nine-month period following the adjudication of neglect, from December 7, 2021, to September 7, 2022, and/or January 11, 2022, to October 11, 2022 (750 ILCS 50/1(D)(m)(i) (West 2020)); (count IV) Failure to make reasonable progress to correct the conditions that were the basis for the removal of K.W. during a nine-month period following the adjudication of neglect, from December 7, 2021, to September 7, 2022, and/or January 11, 2022, to October 11, 2022 (750 ILCS 50/1(D)(m)(ii) (West 2020)).

¶ 13                                    1. *Unfitness*

¶ 14        The hearing on the State's allegations of unfitness took place on December 21, 2022, when K.W. was 16 months old. Lashana P., despite having told her lawyer she would appear by Zoom, was not present at the hearing. Respondent also did not appear and was not in contact with his counsel. The trial court took judicial notice of its own orders. It admitted the integrated assessment and four service plans by stipulation.

¶ 15        C'erra Mack testified respondent received recommendations for parenting classes, a mental health evaluation, and random drug testing. Respondent was in inconsistent contact with the agency. However, that contact became less frequent over the course of the case. The last time respondent had contact with the agency was in May 2022. He was aware of the recommended services but did not complete any. Respondent did not seem to understand why the services were important. He had not appeared for any of the random drug tests since Mack became the caseworker in March 2022. Because no one from the agency had observed respondent during a visit with K.W., his parenting skills could not be evaluated. Respondent did not schedule any visits after March 2022, he never gave presents to K.W., and he never inquired about her welfare.

¶ 16    Counsel for respondent asked Mack whether respondent had done anything that resulted in K.W. being taken into care. Mack said he had not. Mack confirmed respondent's contact with the agency had dropped off over the course of the case. Counsel's questions confirmed that respondent had not engaged in any of the recommended services.

¶ 17    The State asked the trial court to find that it had met its burden counts on I, III, and IV as to Lashana P. and counts I, III, and IV as to respondent. Counsel for respondent stated:

"Based on the evidence presented today and reasons this case came into care combined with the inability or the fact that my client and I haven't met recently or he wasn't here today to further his case, your Honor, I would just ask the Court to consider that the State has failed to meet its burden as it relates to my client and ask you to consider ruling in my client's favor."

¶ 18    The trial court announced its fitness findings on February 1, 2023; a hearing on K.W.'s best interests immediately followed. Both respondent and Lashana P. were present in court.

¶ 19    The trial court found that the State had proven both parents' unfitness by clear and convincing evidence. It also found that because Lashana P. did not visit K.W. regularly, she had been unable to complete a critical "parenting coaching" service. Further: "As to [respondent,] he too had inconsistent contact with the caseworker. There were mental health concerns with [him]. He was referred to a mental health assessment. He did not complete [*sic*]. And he also withdrew from visitation."

¶ 20                    2. *The Child's Best Interests*

¶ 21    During the best interests portion of the hearing, the State simply asked the trial court to take judicial notice of its unfitness findings. Counsel for respondent argued:

"I would also just ask your Honor to take record of any services completed by [respondent]. I believe he did complete an [integrated assessment].

I would also ask your Honor to consider perhaps the issue of cognitive therapy in his case, additionally financial circumstances linking to transportation, in addition the relationship as his father and how it relates to his daughter, and we'd ask the Court to take those things into consideration in its best interests decision."

¶ 22 Taishi Neuman, the person with whom DCFS had placed K.W. and her older brother, represented that K.W. called her "Mama" and her husband "Da." Her husband was a long-distance trucker, but frequently participated in video calls with the children. She said K.W. was "spoiled arm to arm." She wanted to adopt K.W.

¶ 23 The trial court concluded it would be in K.W.'s best interests to terminate both parents' parental rights. According to the court, even if either parent succeeded in becoming fit, that process would take an unreasonably long time. Thus, delay to allow either parent to become fit was not in K.W.'s best interests. Further, K.W. had bonded with Neuman and recognized her placement as her home. It was thus in K.W.'s best interests to remain with Neuman with a goal of adoption. The court therefore granted the State's motion and terminated respondent's and Lashana P.'s parental rights.

¶ 24 This timely appeal followed.

¶ 25 II. ANALYSIS

¶ 26 On appeal, counsel argues that the attorneys representing respondent failed to hold the trial court to the law and thus provided him with ineffective assistance. For instance, he argues that respondent's counsel below was ineffective for failing to investigate the reasons for his inconsistent visits with K.W.:

"A failure to [independently investigate a defense] can result in a finding of ineffective assistance. In this case, counsel's failure to investigate the reasons that could have explained [respondent's] inconsistent visits with the minor would have resulted in a finding that [the] State failed to prove in Count 1 with clear and convincing evidence. The in-court conversation between counsel for the State and the trial court that occurred on April 28, 2022 [at the first permanency review] *** was just one such mitigating evidence available for the counsel, had counsel investigated this issue, counsel would have found further support in State's Exhibit 3, where it was noted that, 'While [respondent] doesn't always confirm his visits, visits have also been cancelled due to illness of baby and worker, and high Covid numbers.' "

¶ 27    The State responds that, among other things, respondent cannot show he was prejudiced by counsel's failure to investigate additional reasons for his failure to visit K.W. It argues further reasons are irrelevant because, after March 2022, respondent failed to take the first step of confirming any visits, making visits impossible.

¶ 28        A. The Standard for Ineffectiveness in Parental Rights Termination

¶ 29        The right to counsel in proceedings under the Act is statutory. 705 ILCS 405/1-5(1) (West 2020). However, our supreme court has held the statutory right guarantees parents the effective assistance of counsel. *In re Br. M.*, 2021 IL 125969, ¶ 42. The supreme court has thus chosen to use the criminal ineffective-assistance-of-counsel standard of *Strickland v. Washington*, 466 U.S. 668 (1984), as "a helpful structure to guide [the] analysis" of an ineffective assistance claim under the Act. *Br. M.*, 2021 IL 125969, ¶ 43.

¶ 30    Under the *Strickland* standard, "a defendant must show substandard performance by defense counsel and resulting prejudice." *Br. M.*, 2021 IL 125969, ¶ 43. A court measures counsel's performance by "an objective standard of competence under prevailing professional norms." *People v. Evans*, 186 Ill. 2d 83, 93 (1999). The *Strickland* court established the following standard for prejudice:

> "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Strickland*, 466 U.S. at 694.

¶ 31    The failure to establish *either* prong of the test is fatal to the claim. *People v. Jackson*, 2020 IL 124112, ¶ 90. Thus, a reviewing court may properly dispose of an ineffective-assistance-of-counsel claim based only on an appellant's failure to show prejudice under the *Strickland* standard. *Jackson*, 2020 IL 124112, ¶ 90.

¶ 32    Failure to investigate a possible defense can be a basis for an ineffective assistance claim:

> "Trial counsel has a professional duty to conduct reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. [Citation.] *** The duty includes the obligation to independently investigate any possible defenses. [Citation.] *** Where the record establishes that counsel had

reason to know, from an objective standpoint, that a possible defense *** was available, failure to investigate fully can constitute ineffective assistance of counsel. [Citation.]" (Internal quotation marks omitted.) *People v. Domagala*, 2013 IL 113688, ¶ 38.

However, the party raising the ineffective assistance claim still must show that he or she was prejudiced under the *Strickland* standard: that a reasonable probability exists that, had counsel investigated and presented the defense, the outcome of the proceeding would have been different. See *Domagala*, 2013 IL 113688, ¶ 43 (stating a defendant must establish *Strickland* prejudice from the failure to investigate or present a defense),

¶ 33        A party with the right to the effective assistance of counsel may properly raise a claim of ineffective assistance of counsel for first time on appeal. See *People v. Jefferson*, 2021 IL App (2d) 190179, ¶ 26 (stating a defendant may raise an ineffective-assistance-of-counsel claim for the first time on appeal). When an appellant raises such a claim for the first time on appeal, our consideration of it is necessarily "equivalent to a *de novo* review." *Jefferson*, 2021 IL App (2d) 190179, ¶ 26. When we consider an issue for the first time on appeal, we address it, but we cannot "review" it, as there is no lower court decision to review.

¶ 34        The State, citing *People v. Phillips*, 2017 IL App (4th) 160557, ¶ 55, argues that, when we address an ineffective-assistance-of-counsel claim, we should disturb the trial court's factual findings only if they are against the manifest weight of the evidence while reviewing *de novo* its ultimate determination of whether counsel rendered ineffective assistance. But this standard is necessarily inapplicable when the trial court has not addressed a claim of ineffective assistance of counsel, as the trial court has not made factual findings. In *Phillips*, the trial court

held an evidentiary hearing on the defendant's ineffective assistance claim (*Phillips*, 2017 IL App (4th) 160557, ¶ 38), and the case is thus distinguishable.

¶ 35                                    B. Respondent Has Failed To Establish Prejudice

¶ 36        Respondent has not met his burden to show that, but for any unprofessional error by his attorneys, a reasonable probability exists that the result of the proceeding would have been different. Respondent argues that his attorneys made errors that resulted in the trial court's finding him unfit. We disagree that he has shown the necessary prejudice.

¶ 37        Respondent has not shown that he had any defense to the allegation that he failed to maintain a reasonable degree of interest, concern, or responsibility for K.W.'s welfare, which, if investigated and presented by counsel, could have changed the outcome of the proceeding. See *Domagala*, 2013 IL 113688, ¶ 43. We need address only this allegation, as "any *one* ground [for finding unfitness], properly proven, is sufficient to enter a finding of unfitness." (Emphasis in original.) *In re C.W.*, 199 Ill. 2d 198, 210 (2002).

¶ 38        Respondent notes portions of the record that may tend to explain why he missed some visits with K.W. including possible difficulties with transportation and cancellations because of others' illness. Those do not suggest defenses counsel should have investigated.

¶ 39        A respondent who regularly misses visitations demonstrates a lack of interest in the child's welfare unless he or she has a "valid excuse" for those absences. *In re M.I.*, 2016 IL 120232, ¶¶ 26-31. The existence of a few visits cancelled because of the illness of others does not suggest an excuse for respondent's complete cessation of visits as of March 2022. Respondent cites an exchange between the State and the trial court at the April 28, 2022, permanency review as one that should have alerted counsel to mitigating evidence. But, as best we can determine from the record on appeal, the exchange at issue relates to the difficulty Lashana P. might have in getting

from Rockford to Cook County. Respondent told the court he lived in Chicago. There was never a suggestion he faced unusual difficulty attending visits.

¶ 40       To be sure, his counsel told the trial court that respondent had reported that the caseworker was not responsive to his request for bus passes. However, given that respondent traveled multiple times to court dates in Rockford, the lack of bus passes does not suggest a reasonable excuse. The *M.I.* court addressed a similar situation, finding that, when an intellectually disabled father showed the ability to navigate the public transportation system to attend court hearings despite the lack of bus passes, the lack of bus passes was not a reasonable excuse for his failure to visit his child. *M.I.*, 2016 IL 120232, ¶ 36.

¶ 41       Further, the circumstances here both suggest no defense existed and are inconsistent with counsel having reason to know that a defense existed. The State alleged that respondent was unfit because he "[f]ail[ed] to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare." 750 ILCS 50/1(D)(b) (West 2020). If respondent were interested in K.W.'s welfare but prevented by circumstances from demonstrating that interest by visiting her, one could reasonably expect he would explain his difficulties to his attorney. Here, counsel represented that that respondent was not in contact with him at the time of the fitness hearing. That lack of contact was inconsistent with counsel having "reason to know, from an objective standpoint, that a possible defense *** was available." (Internal quotation marks omitted.) *Domagala*, 2013 IL 113688, ¶ 38. It also, in itself, suggests respondent did not maintain a reasonable degree of concern for K.W.'s welfare.

¶ 42       For the foregoing reasons, respondent has failed to state a claim of ineffective assistance of counsel.

¶ 43                                III. CONCLUSION

¶ 44       For the reasons stated, we affirm the trial court's judgment.

¶ 45       Affirmed.