(No. 83457.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JOHNNIE LEE EVANS, Appellant.

*Opinion filed February 19, 1999.—Rehearing denied March 29, 1999.*

HEIPLE and RATHJE, JJ., took no part.

HARRISON, J., concurring in part and dissenting in part.

Julie A. Bauer, P. Lee Berger and Cornelius M. Murphy, of Winston & Strawn, of Chicago, for appellant.

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers, Assistant Attorney General, of Chicago, and Renee Goldfarb and Janet Powers Doyle, Assistant State's Attorneys, of counsel), for the People.

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

Defendant, Johnnie Lee Evans, petitioned the circuit court of Cook County for relief pursuant to the Post-Conviction Hearing Act. 725 ILCS 5/122—1 *et seq.* (West 1996). The circuit court dismissed defendant's amended petition without an evidentiary hearing. Defendant appeals directly to this court. 134 Ill. 2d R. 651(a). We affirm.

## BACKGROUND

In defendant's direct appeal, this court recited the details of his crimes. See *People v. Evans*, 125 Ill. 2d 50

(1988). We need not repeat those details here. Defendant was charged with, *inter alia*, the knowing, intentional, and felony murder (Ill. Rev. Stat. 1983, ch. 38, pars. 9—1(a)(1), (a)(2), (a)(3)) and the attempted rape (Ill. Rev. Stat. 1983, ch. 38, pars. 8—4, 11—1) of 16-year-old Adrian Allen. At the close of the evidence, the jury returned general verdicts of guilty of murder and attempted rape.

Defendant waived a sentencing jury. At the first stage of the death sentencing hearing, the trial judge determined that defendant was eligible for the death penalty because he murdered the victim in the course of committing another felony, *i.e.*, attempted rape. See Ill. Rev. Stat. 1983, ch. 38, par. 9—1(b)(6). At the close of the second stage of the death sentencing hearing, the circuit court sentenced defendant to death on the murder conviction and to an extended prison term of 30 years on the attempted rape conviction.

Defendant appealed directly to this court. Ill. Const. 1970, art. VI, § 4(b); 134 Ill. 2d R. 603. While defendant's appeal was pending, the United States Supreme Court issued its decision in *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986). On May 1, 1987, this court entered a supervisory order remanding the cause to the circuit court for a *Batson* hearing. *People v. Evans*, No. 60705, 506 N.E.2d 1314 (1987). The circuit court found that defendant had failed to establish a *prima facie* case of purposeful discrimination in the State's exercise of its peremptory challenges.

On return of the case, this court affirmed defendant's convictions and sentences. *People v. Evans*, 125 Ill. 2d 50 (1988). The United States Supreme Court denied defendant's petition for a writ of *certiorari*. *Evans v. Illinois*, 490 U.S. 1113, 104 L. Ed. 2d 1036, 109 S. Ct. 3175 (1989).

On June 27, 1990, defendant filed in the circuit court a petition for post-conviction relief. Nearly seven years later, defendant filed an amended post-conviction peti-

tion. On May 17, 1997, the circuit court, in the person of the same judge who sentenced defendant, granted the State's motion to dismiss the petition without an evidentiary hearing. We will discuss additional relevant facts in the context of the issues raised on appeal.

## DISCUSSION

A proceeding brought under the Post-Conviction Hearing Act (Act) is not an appeal of a defendant's underlying judgment. Rather, it is a collateral attack on the judgment. The purpose of the proceeding is to resolve allegations that constitutional violations occurred at trial, when those allegations have not been, and could not have been, adjudicated previously. To be entitled to post-conviction relief, the petitioner bears the burden of establishing a substantial deprivation of federal or state constitutional rights. Also, determinations of the reviewing court on the prior direct appeal are *res judicata* as to issues actually decided; issues that could have been presented on direct appeal, but were not, are deemed waived. *People v. Johnson*, 183 Ill. 2d 176, 186 (1998); *People v. Whitehead*, 169 Ill. 2d 355, 371 (1996); *People v. Mahaffey*, 165 Ill. 2d 445, 452 (1995).

The petitioner in a post-conviction hearing is not entitled to an evidentiary hearing as of right. Rather, the Act permits summary dismissal of a nonmeritorious petition. The allegations in the petition, supported where appropriate by the trial record or accompanying affidavits, must show a substantial violation of constitutional rights. *Johnson*, 183 Ill. 2d at 187; *Whitehead*, 169 Ill. 2d at 370-71; *Mahaffey*, 165 Ill. 2d at 452. For the purpose of determining whether to grant an evidentiary hearing, all well-pleaded facts in the petition and in any accompanying affidavits, in light of the original trial record, are to be taken as true. *People v. Coleman*, 183 Ill. 2d 366, 380-82 (1998); *People v. Brisbon*, 164 Ill. 2d 236, 244-45 (1995). The circuit court's dismissal of a post-conviction

petition is reviewed *de novo*. *Coleman*, 183 Ill. 2d at 387-89.

On appeal, defendant contends that he was denied his constitutional rights at trial due to the: (1) prosecution's discriminatory use of its peremptory challenges during *voir dire* to exclude African-American venirepersons from the jury; (2) ineffective assistance of his trial counsel at the death sentencing hearing; and (3) cumulative effect of these errors.

## I. *Batson* Claim

Defendant contends that the prosecution used its peremptory challenges during *voir dire* to exclude African-American venirepersons from the jury. In *Batson*, the United States Supreme Court reaffirmed the principle that the State denies an African-American defendant the equal protection of the laws when it tries the defendant before a jury from which members of the defendant's race have been purposely excluded. *Batson*, 476 U.S. at 85, 90 L. Ed. 2d at 80, 106 S. Ct. at 1716; see *Evans*, 125 Ill. 2d at 62. The ramifications of *Batson* continue to be realized. See, *e.g.*, *Hernandez v. New York*, 500 U.S. 352, 114 L. Ed. 2d 395, 111 S. Ct. 1859 (1991); *Powers v. Ohio*, 499 U.S. 400, 113 L. Ed. 2d 411, 111 S. Ct. 1364 (1991).

*Batson* requires that a defendant first establish a *prima facie* case of discrimination. *Batson*, 476 U.S. at 93-94, 90 L. Ed. 2d at 85-86, 106 S. Ct. at 1721. Once the defendant establishes a *prima facie* case, the burden shifts to the prosecution to come forward with race-neutral and trial-specific reasons for striking the African-American venirepersons. *Batson*, 476 U.S. at 97-98, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723. The trial court must then consider those explanations and determine if the defendant has established purposeful discrimination. *Batson*, 476 U.S. at 98, 90 L. Ed. 2d at 88-89, 106 S. Ct. at 1724; see *People v. Williams*, 147 Ill. 2d 173, 219-20 (1991); *People v. Andrews*, 146 Ill. 2d 413, 424 (1992).

In this case, the circuit court found that defendant had failed to establish a *prima facie* case of purposeful discrimination. On direct review, this court upheld that finding. *Evans*, 125 Ill. 2d at 61-67; see *People v. Peeples*, 155 Ill. 2d 422, 469 (1993) ("a trial judge's determination that a defendant failed to establish a *Batson prima facie* case is a finding of fact and will not be overturned unless it is against the manifest weight of the evidence").

In his post-conviction petition, defendant points to one observation of this court in its discussion of this issue on direct review:

> "Perhaps even more significantly, unlike *Batson* this is not a case involving an interracial crime in which specific racial groups would be prone to take sides of prejudice. [Citation.] Here, the defendant is black, the victim was black, and the majority of witnesses are black. Any racial issue inherent in the selection of the jury is therefore minimal, if not nonexistent." *Evans*, 125 Ill. 2d at 65-66.

Defendant assigns error to this observation. The petition, supported by affidavits, alleges that the trial record fails to indicate the race of most of the witnesses and, further, that 8 of the 15 witnesses who testified at the guilt phase of the trial were white. The circuit court found that this claim was *res judicata*.

Before this court, defendant argues that, "[b]ecause [defendant's] claim was supported by new evidence, *res judicata* did not apply." The State initially responds that defendant failed to include the race of the trial witnesses in the record of the *Batson* hearing. Thus, the State contends, "because defendant's 'new evidence' is not really new, and could have been made part of the record on direct appeal, it is insufficient to overcome *res judicata*." In his reply, defendant denies the existence of "a requirement that, to avoid *res judicata*, it is necessary that the new evidence at issue could not have been part of the record on direct appeal."

Defendant's contention lacks merit. "It is well

established that the scope of post-conviction review is limited to constitutional matters which have not been, and could not have been, previously adjudicated." *People v. Coleman*, 168 Ill. 2d 509, 522 (1995); accord *People v. Silagy*, 116 Ill. 2d 357, 365 (1987); *People v. Derengowski*, 44 Ill. 2d 476, 479 (1970). Therefore, "[t]he judgment of the reviewing court on a previous appeal is *res judicata* as to all issues actually decided, and any claim that could have been presented to the reviewing court in the direct appeal is, if not presented, thereafter barred under the doctrine of waiver." *Silagy*, 116 Ill. 2d at 365; accord *Derengowski*, 44 Ill. 2d at 479; *Ciucci v. People*, 21 Ill. 2d 81, 85 (1960). We note that these procedural bars occasionally may be relaxed when fundamental fairness requires. *Coleman*, 168 Ill. 2d at 522; *Derengowski*, 44 Ill. 2d at 479; *People v. Ashley*, 34 Ill. 2d 402, 408 (1966).

We remanded this cause to the circuit court specifically for a *Batson* hearing. This was defendant's opportunity to establish a *Batson prima facie* case. At the *Batson* hearing, defendant and the prosecution stipulated to the race of the selected jurors and the peremptorily excused venirepersons. Defendant knew the race of the trial witnesses, and could have easily included those facts in the record of the *Batson* hearing. Such facts are part of the totality of relevant circumstances a trial court may consider when determining whether there was discrimination. *Evans*, 125 Ill. 2d at 63-64, citing *United States v. Mathews*, 803 F.2d 325, 332 (7th Cir. 1986), *rev'd on other grounds*, 485 U.S. 58, 99 L. Ed. 2d 54, 108 S. Ct. 883 (1988). Defendant carried the burden of preserving those facts in the record of the *Batson* hearing. See *Johnson*, 183 Ill. 2d at 190; *People v. Henderson*, 142 Ill. 2d 258, 279-80 (1990). Defendant's failure to do so constitutes a waiver of this issue in this post-conviction proceeding. Further, no reason based on fundamental fairness suggests itself as to why the waiver rule should

not apply to this claim. The circuit court properly dismissed this claim.

## II. Ineffective Assistance of Counsel: Death Sentencing Hearing

Defendant next claims that he was denied his constitutional right to effective assistance of counsel at the second stage of the death sentencing hearing. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. To establish a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong *Strickland* test. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984); see *Brisbon*, 164 Ill. 2d at 245-46.

The test is composed of two prongs: deficiency and prejudice. First, the defendant must prove that counsel made errors so serious, and that counsel's performance was so deficient, that counsel was not functioning as the "counsel" guaranteed by the sixth amendment. A court measures counsel's performance by an objective standard of competence under prevailing professional norms. To establish deficiency, the defendant must overcome the strong presumption that the challenged action or inaction might have been the product of sound trial strategy. *People v. Griffin*, 178 Ill. 2d 65, 73-74 (1997); *Mahaffey*, 165 Ill. 2d at 457-58.

Second, the defendant must establish prejudice. The defendant must prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. The prejudice prong of *Strickland* entails more than an "outcome-determinative" test. The defendant must show that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. *Griffin*, 178 Ill. 2d at 74. In the context of a death

sentencing hearing, a defendant must prove that there is a reasonable probability that, absent counsel's deficient conduct, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. *Mahaffey*, 165 Ill. 2d at 466.

A defendant must satisfy both prongs of the *Strickland* test. However, if the ineffective-assistance claim can be disposed of on the ground that the defendant did not suffer prejudice, a court need not decide whether counsel's performance was constitutionally deficient. *Griffin*, 178 Ill. 2d at 74; *Whitehead*, 169 Ill. 2d at 380-81. Defendant makes three contentions in support of this claim.

## A. *Failure to Investigate: Extreme Mental or Emotional Disturbance*

Defendant contends that trial counsel failed to introduce available evidence to support the statutory mitigating factor that "the murder was committed while the defendant was under the influence of extreme mental or emotional disturbance." Ill. Rev. Stat. 1983, ch. 38, par. 9—1(c)(2).

The State initially responds that the issue is waived in this post-conviction proceeding. We disagree. The trial record does not include the evidence which defendant now presents to substantiate his claim of ineffective assistance. "Rules of waiver and *res judicata* will be relaxed where the facts relating to the issue of counsel's incompetency do not appear on the face of the record." *People v. Orange*, 168 Ill. 2d 138, 167 (1995). Therefore, we will address the merits of this issue. See, *e.g., People v. Britz*, 174 Ill. 2d 163, 184-85 (1996); *People v. Eddmonds*, 143 Ill. 2d 501, 528 (1991).

The issue of whether defendant received effective assistance of counsel must be determined from the totality of counsel's conduct. *People v. Stewart*, 101 Ill. 2d 470, 493 (1984). At the close of the guilt phase of the trial,

defendant's trial counsel sought a 30-day continuance so defendant could receive a psychiatric evaluation from Dr. Alan Rosenwald. The trial court inquired as to the purpose of the examination. Counsel responded: "Judge, it would go to the indicia—mitigation. I believe one of the factors in mitigation is that extreme, emotional distress." The trial court granted the continuance.

At the second stage of the death sentencing hearing, defendant's mitigation witnesses were himself and Dr. Rosenwald, in that order. Defendant, during direct examination, testified at length as to his troubled and disadvantaged life. He also denied committing the present crimes. During cross-examination, defendant denied having any knowledge of or involvement in the attempted rape and murder of the victim. He testified that he did not know the victim and that he was not in the elevator with her. Defendant testified that his inculpatory statement was not voluntary; he falsely confessed in exchange for a promise of a lesser charge and police protection for his family.

Dr. Rosenwald next testified. Defendant's trial counsel asked Dr. Rosenwald whether he was "able to a degree of reasonable certainty, able to determine whether or not [defendant] is acting under an extreme emotional or mental distress?" Dr. Rosenwald answered: "Well, if extreme is chronic, I have trouble with the term extreme. I think this is a long-standing mental disturbance, and that consequently there would be periods of time where [defendant] would be acting under extreme duress. That he has been chronically ill for many years." On cross-examination, Dr. Rosenwald again concluded "that it was highly probable that [defendant] was under emotional factors which could contribute to the crimes that he committed." Also, during cross-examination, Dr. Rosenwald testified that defendant's trial counsel had not asked him to consider, thus his report did not discuss, whether de-

fendant was acting under an extreme mental or emotional disturbance *at the time he committed the murder*.

Now, in this post-conviction proceeding, defendant contends that trial counsel was ineffective for failing to elicit testimony from Dr. Rosenwald that tracked the language of the statutory mitigating factor, *i.e.*, that defendant was acting under the influence of an extreme mental or emotional disturbance *at the time of the offense*. See *Evans*, 125 Ill. 2d at 89. Defendant's post-conviction petition includes affidavits from Dr. Rosenwald, Dr. Gerard Girdaukas, and Arlene Messner-Peters, attesting that defendant was under such a disturbance at the time of the murder.

This contention fails both the deficiency and prejudice prongs of the *Strickland* test. First, considering the totality of the circumstances, we cannot say that the performance of defendant's trial counsel was objectively incompetent. It is true that "[u]nder the Illinois murder statute, evidence that a defendant *was acting* under the influence of an extreme emotional disturbance at the time of the murder is one of the factors to be considered in mitigation, and may be a basis for imposing a sentence other than death." (Emphasis added.) *People v. Foster*, 168 Ill. 2d 465, 490 (1995). In this case, however, defendant testified that he *did not act*, *i.e.*, he was not involved in the murder in any way. "Defendant's insistence of innocence colors the understanding of his claim." *People v. Kokoraleis*, 159 Ill. 2d 325, 330 (1994). "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland*, 466 U.S. at 691, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066.

It would have been difficult for defendant's trial counsel to elicit testimony from Dr. Rosenwald and, based thereon, argue that defendant *acted* under the influence of an extreme mental or emotional disturbance at the

time of the murder when defendant had just finished testifying that he *did not act* in any way. For counsel to have presented evidence of this mitigating mental state, as defendant now contends, would have been inconsistent with defendant's own testimony. See *People v. Sanchez*, 169 Ill. 2d 472, 491 (1996). "Defense counsel's decision to forgo the presentation of mitigation evidence that would be inconsistent with the defendant's sworn trial testimony has been held constitutionally adequate." *People v. Holman*, 164 Ill. 2d 356, 373 (1995).

Should trial counsel have presented a defense that contradicted defendant's protestations of innocence? Should counsel have labelled their client a liar so they could additionally label him a murderer who acted under an extreme emotional disturbance? Rather, closing argument reveals that trial counsel's sentencing strategy was to portray defendant as the neglected and unwanted victim of an abusive childhood, who raped women in a misguided quest for love. "A reasoned decision to make the best of a bad situation by pursuing a particular line of defense satisfies the constitutional minimum." *Kokoraleis v. Gilmore*, 131 F.3d 692, 697 (7th Cir. 1997).

Second, this contention fails the prejudice prong of the *Strickland* test. In other words, defendant has failed to show a reasonable probability that, had trial counsel presented evidence that defendant had acted under an extreme emotional disturbance at the time of the murder, the trial judge would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. See *Mahaffey*, 165 Ill. 2d at 466.

The aggravation evidence is plentiful and significant. Initially, defendant admitted his involvement in these crimes; his inculpatory statement was admitted at trial. Many details of his statement were corroborated by other evidence.

The record contains the following additional aggrava-

tion evidence. Between 1969 and 1974, defendant committed several offenses including criminal trespass, theft, and disorderly conduct. In 1974, defendant raped Tina Yancy at knifepoint in an elevator; however, charges based on this incident were subsequently dismissed. In 1975, 20 days after his release from the county jail on the charges brought by Yancy, defendant raped Loretta Brown in an elevator. One week later, he raped Ruby Coleman in an elevator. Defendant was tried, convicted and imprisoned. In 1978, nine days after his release from prison, defendant raped Gail Carroll at knifepoint in an elevator. Again, defendant was tried, convicted, and imprisoned. In 1983, 24 days after his release from prison, defendant attempted to rape Annie Webb in an elevator. Instead, he battered her and one of her children and stole her purse, which contained a pearl-handled knife bearing the word "Lion" on the handle. The next day, defendant attempted to rape Diane Smith at knifepoint in her apartment. Smith resisted, defended herself with a kitchen knife, and forced defendant from her apartment. The day after that, defendant raped Maeline Mitchell at knifepoint in an elevator; Mitchell identified defendant's knife as the one defendant had stolen from Webb. Four days later, on January 22, 1983, defendant stabbed the victim in this case to death in an attempt to rape her in an elevator.

Additional aggravation evidence included the following. While defendant was incarcerated at Menard Correctional Center, he sent letters to Paula Banks, a 16-year-old sister of another inmate. In those letters, defendant asked Banks to be his girlfriend. In one letter, defendant threatened her life if she did not comply. While he was incarcerated at Graham Correctional Center, defendant was disciplined for grabbing a female correctional officer's buttocks. When defendant was released on parole, he did not cooperate with his parole officer

and made no effort to find employment. A petition for violation of parole was filed as a result of the charges in this case.

First, given all of the evidence before the trial judge, there is no reasonable probability that the additional evidence now offered by defendant would have caused the trial judge to find the existence of this statutory mitigating factor. A defendant is under the influence of an extreme emotional disturbance when the defendant's emotional state at the time of the murder is at such a fragile point as to leave him or her with little to no emotional control. *Johnson*, 183 Ill. 2d at 206, quoting *People v. Phillips*, 127 Ill. 2d 499, 534 (1989). Here, the aggravation evidence, including defendant's inculpatory statement, shows that defendant's overall mental state was one of rationality and composure. Also, since defendant initially lied to police prior to giving his inculpatory statement, he apparently appreciated the criminality of his acts. See *Johnson*, 183 Ill. 2d at 206; *Foster*, 168 Ill. 2d at 491-92; *Phillips*, 127 Ill. 2d at 534-35.

Second, it must be remembered that:

> "proof of one mitigating factor, by itself, will not always preclude the imposition of the death sentence. Instead, the sentencing authority should carefully weigh the factors, aggravating and mitigating, in order to reach a fair and just result, one that is based on the particular circumstances of the offense and the defendant." *People v. Brownell*, 79 Ill. 2d 508, 538 (1980).

In light of the overwhelming aggravation evidence, we hold that even if defendant had established the existence of this statutory mitigating factor, there is no reasonable probability that the trial judge would have imposed a sentence other than death. The circuit court properly dismissed this claim.

B. *Failure to Investigate: Other Mitigation Evidence*

Defendant next contends that trial counsel failed to investigate and present evidence of other nonstatutory

mitigating factors. We earlier described the aggravation evidence. Defendant's mitigation witnesses were himself and Dr. Rosenwald.

Defendant's testimony touched on many aspects of his life. Defendant gave extensive, detailed testimony regarding neglect, abuse, and sexual molestation from family, coworkers, and strangers during his childhood and teenage years. Defendant testified regarding his married life. He described his first wife and their children, and how the family was separated due to his jail record and his first wife's neglect of their children.

He admitted committing all of the rapes with which he was charged, except for the rape of Tina Yancy. Defendant explained that he "didn't mean to rape [those] women," but that he did so due to a "need of affection." He explained: "I had to prove that I was a man," and "I just wanted somebody to love me."

Also, defendant explained that he did not grab the buttocks of the female correctional officer; rather, he accidently touched her from behind his back. At first, the officer accepted his apology. However, she subsequently saw defendant laughing with other inmates; she believed that defendant was talking about her. At that point, she reported the touching to her supervisor, who ordered her to formally report the incident. Additionally, defendant denied writing letters to Paula Banks, but acknowledged that the name and prison identification number on the letter were his.

Dr. Rosenwald performed a psychiatric examination of defendant. Dr. Rosenwald believed that defendant felt "very impotent and empty and dependent" and "victimized." Defendant also felt anger as a result of neglect and abuse by his family. Dr. Rosenwald described defendant as "chronically a depressed human being who feels helpless, rejected, abandoned, unloved."

Dr. Rosenwald also testified that defendant: might

have considerable difficulty in understanding the feelings and emotions of other people; did not have very good control of his own emotions, which would emerge in a "tumultuous" fashion; and had "a kind of psychopathology in the sexual area."

Dr. Rosenwald opined that defendant: had average intelligence; was able to conform his thinking to conventional standards "when emotional situations are not in play," was "chronically depressed"; and felt himself to be a victim of society and, therefore, "would not see himself as primarily responsible." Dr. Rosenwald opined that defendant could benefit "from some kind of psychotherapeutic intervention," but defendant "without treatment is indeed a danger to society."

Now, in his post-conviction petition, defendant contends that trial counsel was constitutionally ineffective for failing to investigate and present evidence of defendant's: (1) social history, as described in the affidavit of Messner-Peters, and (2) mental impairments, as described in the affidavit of Dr. Girdaukas. We disagree.

The evidence of defendant's social history described in the Messner-Peters affidavit would have been cumulative to defendant's extensive mitigation testimony and, thus, of no effect on the outcome of the death sentencing hearing. See *Sanchez*, 169 Ill. 2d at 490-91; *cf. People v. Towns*, 182 Ill. 2d 491, 521 (1998) (proffered mitigation evidence not cumulative where mitigation evidence presented at death sentencing hearing "devoid of detail regarding defendant's life"). Further, such evidence is not inherently mitigating. *Stewart v. Gramley*, 74 F.3d 132, 136 (7th Cir. 1996). The trial judge might have considered such evidence to be an aggravating factor. The judge could have regarded defendant's troubled life, with his criminal record, as an indicator of defendant's future dangerousness. See *Mahaffey*, 165 Ill. 2d at 467; *People v. Ward*, 154 Ill. 2d 272, 335-37 (1992).

Similarly, evidence of mental impairments as described in Dr. Girdaukas' affidavit is not inherently mitigating. *Holman v. Gilmore*, 126 F.3d 876, 882-84 (1997). Proof of defendant's mental handicaps not only could evoke compassion from the trial judge, but also could have demonstrated defendant's continued dangerousness. See *Foster*, 168 Ill. 2d at 490-91; *Mahaffey*, 165 Ill. 2d at 467-68.

"Moreover, we must assess prejudice in a realistic manner based on the totality of the evidence. Accordingly, it is improper to focus solely on the potential mitigating evidence. As our cases illustrate, the nature and extent of the evidence in aggravation must also be considered." *Coleman*, 168 Ill. 2d at 538 (collecting cases). In this case, the aggravation evidence was overwhelming. We conclude that the introduction of the evidence now proffered by defendant regarding his background and mental health would not have created a reasonable probability of a different sentence. See *Coleman*, 168 Ill. 2d at 539; *People v. Thomas*, 164 Ill. 2d 410, 424-29 (1995). The circuit court properly dismissed this claim.

### C. *Failure to Object: Victim's Pregnancy*

Defendant next contends that trial counsel failed to object to aggravation evidence and argument that the victim was pregnant. Edmund Donaghue, deputy chief medical examiner of Cook County, testified that the victim was five months' pregnant at the time she was killed. Defendant notes Dr. Donaghue's testimony that the victim's pregnancy was not externally visible; thus, defendant was unaware that she was pregnant. During closing argument, both the prosecution and defendant's trial counsel referred to this evidence. Defendant's trial counsel failed to object to this evidence and argument.

Defendant argues that such evidence and argument were irrelevant, inflammatory, and highly prejudicial.

Dismissing this claim, the circuit court found that defendant's trial counsel was not deficient and defendant was not prejudiced.

This issue is barred by operation of *res judicata* and waiver. A petitioner cannot obtain relief under the Act by rephrasing issues, which were previously addressed, in constitutional terms, such as ineffective assistance of counsel. *People v. Flores*, 153 Ill. 2d 264, 277-78 (1992) (and cases cited therein). This court found that defendant was not prejudiced by this evidence and argument. *Evans*, 125 Ill. 2d at 94-96. Defendant cannot now argue that trial counsel was ineffective for failing to object to what this court has previously concluded to be nonprejudicial. See *Thomas*, 164 Ill. 2d at 420-21. The circuit court properly dismissed this claim.

### III. Cumulative Effect of Alleged Errors

Defendant lastly claims that the cumulative effect of these alleged errors violated his constitutional rights. The circuit court properly dismissed this claim. We have rejected each claim in this post-conviction petition. Thus, there can be no cumulative effect. See *People v. Franklin*, 135 Ill. 2d 78, 105 (1990); *People v. Albanese*, 102 Ill. 2d 54, 82-83 (1984).

### CONCLUSION

For the foregoing reasons, the order of the circuit court of Cook County is affirmed. The clerk of this court is directed to enter an order setting Tuesday, May 18, 1999, as the date on which the sentence of death entered in the circuit court is to be imposed. The defendant shall be executed in the manner provided by law. 725 ILCS 5/119—5 (West 1996). The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, the warden of Tamms Correctional Center, and the warden of the institution where defendant is now confined.

*Affirmed.*

JUSTICES HEIPLE and RATHJE took no part in the consideration or decision of this case.

JUSTICE HARRISON, concurring in part and dissenting in part:

I agree that no basis exists for disturbing Evans' convictions or the sentence he received for the attempted rape of Adrian Allen. In my view, however, Evans' death sentence should not be allowed to stand. For the reasons set forth in my dissent in *People v. Bull*, 185 Ill. 2d 179 (1998), this state's present death penalty law does not meet the requirements of the eighth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VIII, XIV) or article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2). Accordingly, we should vacate Evans' death sentence and remand the cause to the circuit court for imposition of a sentence other than death.