NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 241269-U

NOS. 4-24-1269, 4-24-1272, 4-24-1274 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 24, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* K.C., N.C., and B.C., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Henry County |
| Petitioner-Appellee, | ) | Nos. 21JA37 |
| v. | ) | 21JA38 |
| Roselyn R., | ) | 23JA7 |
| Respondent-Appellant). | ) | |
| | ) | Honorable |
| | ) | James J. Cosby, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Lannerd and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, concluding (1) the trial court did not err in finding termination of respondent's parental rights was in the minors' best interest, (2) termination of respondent's parental rights was not unconstitutional, and (3) respondent did not receive ineffective assistance of counsel.

¶ 2    On September 25, 2024, the trial court entered an order terminating the parental rights of respondent, Roselyn R., as to her minor children, K.C. (born March 2013), N.C. (born May 2021), and B.C. (born February 2023). Respondent appeals, arguing the court erred in finding termination of her parental rights was in the minors' best interest, termination of her parental rights was unconstitutional, and she received ineffective assistance of counsel. The State contends respondent's claims are either forfeited or do not amount to error. We agree with the State and affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. Case Opening

¶ 5         On November 19, 2021, the State filed petitions for adjudication of wardship. The petitions alleged K.C. and N.C. were in an environment that was injurious to their welfare in that respondent had substance abuse issues and had not cooperated with and/or completed intact services. 705 ILCS 405/2-3(1)(b) (West 2020). On May 24, 2022, the trial court adjudicated the minors neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2022)). Following the July 13, 2022, dispositional hearing, the trial court made the minors wards of the court and placed their custody and guardianship with the Illinois Department of Children and Family Services (DCFS).

¶ 6         B.C. was born on February 23, 2023, and tested positive for methamphetamine. B.C. was immediately placed in the same foster home as his siblings. The State filed a petition for adjudication of wardship and a motion for temporary custody on February 28, 2023. The petition alleged B.C. was in an environment injurious to his welfare in that (1) K.C. and N.C. were previously removed from respondent's care and (2) respondent tested positive for amphetamines and methamphetamine at the time of B.C.'s birth. That same day, the trial court entered an order placing temporary custody and guardianship with DCFS.

¶ 7         On March 8, 2023, the trial court adjudicated B.C. neglected pursuant to respondent's stipulation pursuant to section 2-3(1)(b) of the Juvenile Court Act (705 ILCS 405/2-3(1)(b) (West 2022)). The court then held a dispositional hearing on April 12, 2023, at which point the court made B.C. a ward of the court and continued custody and guardianship with DCFS.

¶ 8         On February 14, 2024, the trial court changed the permanency goal to substitute care pending termination of respondent's parental rights.

¶ 9        On February 26, 2024, the State filed petitions to terminate respondent's parental rights. The petitions alleged respondent was an unfit parent in that (1) she abandoned the minors (750 ILCS 50/1(D)(a) (West 2022)); (2) she failed to maintain a reasonable degree of interest, concern, or responsibility for the minors' welfare (750 ILCS 50/1(D)(b) (West 2022)); (3) she failed to make reasonable efforts to correct the conditions that caused the minors to be removed during a nine-month period after the minors were adjudicated neglected (750 ILCS 50/1(D)(m)(i) (West 2022)); and (4) she failed make reasonable progress toward the return of the minors to her care during a nine-month period after the minors were adjudicated neglected (750 ILCS 50/1(D)(m)(ii) (West 2022)). The relevant time periods alleged for K.C. and N.C. were July 14, 2022, to April 14, 2023, and April 15, 2023, to January 15, 2024. The relevant time period alleged for B.C. was April 13, 2023, to January 13, 2024. The State also included Joshua C., the minors' father, in the petitions to terminate parental rights. (We note Joshua C. is not a party to this appeal.)

¶ 10                                B. Fitness Hearing

¶ 11        The trial court commenced the fitness hearing on September 25, 2024. After being properly admonished and pursuant to respondent's voluntary stipulation, the court found respondent unfit in that she failed to make both reasonable efforts and reasonable progress toward the return of the minors to her care. (Respondent does not challenge the finding of unfitness on appeal.)

¶ 12                                C. Best-Interest Hearing

¶ 13        The trial court proceeded immediately to the best-interest hearing. The best-interest report filed on September 25, 2024, noted K.C. and N.C. had been in foster care since July 2022 and B.C. had been in foster care since February 2024. The authors of the best-interest report indicated respondent had maintained a relationship with the minors throughout the life of the case.

According to the report, the minors were "extremely bonded" to the foster parents and their physical, mental, and emotional needs were being met by the foster parents.

¶ 14　　　　Jennifer Walker testified she had been the minors' caseworker since September 23, 2023, and was an author of the best-interest report. Walker noted respondent appeared "actively involved" during visits with the minors. However, she noted respondent's lack of sustained sobriety, failure to participate in mental health counseling, and lack of stable housing and income were all barriers to respondent having the children. With regard to the foster parents, Walker indicated N.C. and B.C. refer to them as " 'Mom' and 'Dad.' " K.C. expressed her desire to remain with her foster parents. The foster parents provide food, shelter, health care, and clothing, and the children have grown to identify with the foster parents as a family unit. Walker further noted the foster parents were willing to provide permanency through adoption.

¶ 15　　　　Respondent testified she had been employed at Walmart in Moline, Illinois, for four months. She admitted she had been unable to provide the caseworker with a pay stub. Regarding housing, respondent indicated her house was in foreclosure, but she did "not have to be out until they sell it and 30 days after that, and they have not sold it." Respondent stated she was accepted into public housing in Iowa and her recent drug drops had been negative.

¶ 16　　　　Following arguments, and after considering the contents of the best-interest report and the evidence presented, the trial court found termination of respondent's parental rights was in the minors' best interest. The court emphasized the minors' need for permanency, noting their foster placement was "basically the only home [N.C. and B.C. have] ever known." K.C. was integrated into the foster family, community, and school. In their foster placement, the court highlighted, the minors "have a home. They have support. They have income. They have a sense of attachment." Conversely, the court noted respondent's lack of permanent housing, stating

respondent did not "know where [her] home's going to be 60 days from now." The court concluded the minors deserved permanency and it was in their best interest that respondent's parental rights be terminated.

¶ 17 This consolidated appeal followed.

¶ 18 II. ANALYSIS

¶ 19 On appeal, respondent argues (1) the trial court's best-interest findings were against the manifest weight of the evidence, (2) termination of her parental rights was unconstitutional, and (3) she received ineffective assistance of counsel.

¶ 20 A. Best-Interest Findings

¶ 21 Respondent first argues the trial court's best-interest findings were against the manifest weight of the evidence.

¶ 22 When a trial court finds a parent to be unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *In re D.T.*, 212 Ill. 2d 347, 352 (2004). "[A]t a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364. The State must prove by a preponderance of the evidence that termination of parental rights is in the minors' best interest. *D.T.*, 212 Ill. 2d at 366. In making the best-interest determination, the court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2022)). These factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments, including love, security, familiarity, and continuity of affection, and the least-disruptive placement alternative; (5) the

child's wishes; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009) (citing 705 ILCS 405/1-3(4.05) (West 2008)).

"The court's best interest determination [need not] contain an explicit reference to each of these factors, and a reviewing court need not rely on any basis used by the trial court below in affirming its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. "A reviewing court affords great deference to a trial court's best-interest finding because the trial court is in a superior position to view the witnesses and judge their credibility." *In re J.B.*, 2019 IL App (4th) 190537, ¶ 33. On review, "[w]e will not disturb a court's finding that termination is in the children's best interest unless it was against the manifest weight of the evidence." *In re T.A.*, 359 Ill. App. 3d 953, 961 (2005).

¶ 23    Here, the trial court's best-interest findings were not against the manifest weight of the evidence. The best-interest report showed the minors were thriving in their relative foster placement. The minors were well bonded to their foster parents, and their physical and emotional needs were being met by their foster parents. According to Walker, N.C. and B.C. referred to their foster parents as " 'Mom' and 'Dad.' " Moreover, K.C. had a sense of community in her current foster placement. The foster parents met the minors' basic needs for food, clothing, health care, and shelter, and they provided for their physical safety and gave the minors a sense of belonging. All told, the evidence in the record supports the trial court's decision that terminating respondent's parental rights served the minors' best interest, meaning the decision is neither unreasonable nor

arbitrary. See *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16.

¶ 24                              B. Constitutionality of Termination of Parental Rights

¶ 25          Respondent further argues the termination of her parental rights was not narrowly

tailored to protect the children's welfare and is thus unconstitutional as applied to her. See U.S.

Const., amend. XIV, § 1 (No state shall "deprive any person of life, liberty, or property, without

due process of law."). Respondent acknowledges she has forfeited this argument on appeal because

it was not raised before the trial court.

¶ 26          Our supreme court has long held, "a parent's right to control the upbringing of his

or her children is a fundamental constitutional right." *In re R.C.*, 195 Ill. 2d 291, 303 (2001) (citing

*Troxel v. Granville*, 530 U.S. 57 (2000)). Under a strict scrutiny analysis, the reviewing court

determines whether "the measures employed by the legislature [are] necessary to serve a

compelling state interest, and [are] narrowly tailored thereto, *i.e.*, the legislature must use the least

restrictive means consistent with the attainment of its goal." *In re D.W.*, 214 Ill. 2d 289, 310 (2005).

Respondent does not dispute the State has a compelling interest in protecting the welfare of

children in general. *R.C.*, 195 Ill. 2d at 305.

¶ 27          In criminal cases, forfeited claims may be reviewed under the plain-error doctrine

"where a clear and obvious error occurred" and (1) "the evidence is so closely balanced that the

error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness

of the error," or (2) the "error is so serious that it affected the fairness of the defendant's trial and

challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People

v. Belknap*, 2014 IL 117094, ¶ 48. The plain-error doctrine can be applied in abuse and neglect

cases. *In re Andrea D.*, 342 Ill. App. 3d 233, 242 (2003). "The first step of plain-error review is to

determine whether error occurred," and "[t]he burden of persuasion rests with the defendant."

*People v. Curry*, 2013 IL App (4th) 120724, ¶ 62.

¶ 28        Citing section 11-5 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/11-5 (West 2022)) respondent alleges, "There is nothing in the record to suggest that the guardianship would not have been just as effective in protecting the [minors] as these termination matters." She reasons a guardianship under the Probate Act "would also better respect [her] fundamental liberty interest by allowing her the hope of reuniting with [her] children." This argument ignores the fact that respondent stipulated to her own unfitness, as well as the inherent lack of permanency, which the Juvenile Court Act is designed to address. Indeed, after a finding of unfitness, "[t]he issue is no longer whether parental rights *can* be terminated; the issue is whether, in light of the child's needs, parental rights *should* be terminated." (Emphases in original.) *D.T.*, 212 Ill. 2d at 364. Thus, at the best-interest hearing, "the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364. The minor has a protected liberty interest in being raised in a " 'normal family home,' " meaning a " 'loving, stable and safe home environment.' " *D.T.*, 212 Ill. 2d at 363. The Juvenile Court Act "establishes an elaborate and carefully tailored scheme to effect a balance between the constitutional rights of parents and the statutorily created rights of children to health, safety, and protection." *In re O.S.*, 364 Ill. App. 3d 628, 638 (2006). Further, respondent's rights were terminated after the best-interest hearing, at which respondent testified, thereby being afforded due process. As such, we find no constitutional violation and thus, no error. Without a clear and obvious error, there can be no plain error. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 29                    C. Ineffective Assistance of Counsel

¶ 30        Respondent finally argues her trial counsel was ineffective for failing to "raise a constitutional challenge by suggesting that a guardianship or other less destructive process was

appropriate."

¶ 31 Under section 1-5(1) of the Juvenile Court Act (705 ILCS 405/1-5(1) (West 2022)), minors and their parents in juvenile proceedings have the right to effective assistance of counsel. *In re Abel C.*, 2013 IL App (2d) 130263, ¶ 12. Even though this right is statutory rather than constitutional, Illinois courts nevertheless gauge the effectiveness of counsel in juvenile proceedings by applying the constitutional standard from criminal law, specifically, the standard in *Strickland v. Washington*, 466 U.S. 668 (1984). *In re Ch. W.*, 399 Ill. App. 3d 825, 828 (2010). Under *Strickland*, a party alleging ineffective assistance must prove two propositions: (1) "counsel's representation fell below an objective standard of reasonableness" (*Strickland*, 466 U.S. at 688) and (2) there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (*Strickland*, 466 U.S. at 694). "A defendant must satisfy both prongs of the *Strickland* test." *People v. Evans*, 186 Ill. 2d 83, 94 (1999). "However, if the ineffective-assistance claim can be disposed of on the ground that the defendant did not suffer prejudice, a court need not decide whether counsel's performance was constitutionally deficient." *Evans*, 186 Ill. 2d at 94.

¶ 32 As discussed, this claim was without merit. Therefore, respondent was not prejudiced by trial counsel's failure to preserve a meritless claim. *Evans*, 186 Ill. 2d at 94.

¶ 33                                        III. CONCLUSION

¶ 34 For the reasons stated, we affirm the trial court's judgment.

¶ 35 Affirmed.