NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241271-U

NOS. 4-24-1271, 4-24-1273, 4-24-1275 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 24, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* K.C., N.C., and B.C., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Henry County |
| Petitioner-Appellee, | ) | Nos. 21JA37 |
| v. | ) | 21JA38 |
| Joshua C., | ) | 23JA7 |
| Respondent-Appellant). | ) | |
| | ) | Honorable |
| | ) | James J. Cosby, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Lannerd and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, concluding (1) the trial court did not err in finding termination of respondent's parental rights was in the minors' best interest, (2) termination of respondent's parental rights was not unconstitutional, and (3) respondent did not receive ineffective assistance of counsel.

¶ 2    On September 25, 2024, the trial court entered an order terminating the parental rights of respondent, Joshua C., as to his minor children, K.C. (born March 2013), N.C. (born May 2021), and B.C. (born February 2023). Respondent appeals, arguing the court erred in finding termination of his parental rights was in the minors' best interest, termination of his parental rights was unconstitutional, and he received ineffective assistance of counsel. The State contends respondent's claims are either forfeited or do not amount to error. We agree with the State and affirm.

¶ 3                                I. BACKGROUND

¶ 4                                A. Case Opening

¶ 5        On November 19, 2021, the State filed petitions for adjudication of wardship. The petitions alleged K.C. and N.C. were in an environment that was injurious to their welfare in that respondent had substance abuse issues and had not cooperated with and/or completed intact services. 705 ILCS 405/2-3(1)(b) (West 2020). On May 24, 2022, the trial court adjudicated the minors neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2022)). Following a dispositional hearing on July 13, 2022, the trial court made the minors wards of the court and placed their custody and guardianship with the Illinois Department of Children and Family Services (DCFS).

¶ 6        On February 28, 2023, following the birth of B.C., in which he tested positive for methamphetamine, the State filed a petition for adjudication of wardship and a motion for temporary custody. The petition alleged B.C. was in an environment injurious to his welfare in that (1) K.C. and N.C. were previously removed from respondent's care due to his substance abuse issues and (2) the minors' mother, Roselyn R., tested positive for amphetamines and methamphetamine at the time of B.C.'s birth. That same day, the trial court entered an order placing temporary custody and guardianship with DCFS.

¶ 7        On March 8, 2023, the trial court adjudicated B.C. neglected pursuant to respondent's stipulation and section 2-3(1)(b) of the Juvenile Court Act (705 ILCS 405/2-3(1)(b) (West 2022)). The court then held a dispositional hearing on April 12, 2023, at which point the court made B.C. a ward of the court and continued custody and guardianship with DCFS.

¶ 8        On February 14, 2024, the trial court changed the permanency goal to substitute care pending termination of respondent's parental rights.

¶ 9 On February 26, 2024, the State filed petitions to terminate respondent's parental rights. The petitions alleged respondent was an unfit parent in that (1) he abandoned the minors (750 ILCS 50/1(D)(a) (West 2022)); (2) he failed to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2022)); (3) he failed to make reasonable efforts to correct the conditions that caused the minors to be removed during a nine-month period after they were adjudicated neglected (750 ILCS 50/1(D)(m)(i) (West 2022)); and (4) he failed to make reasonable progress toward the return of the minors to his care during a nine-month period after they were adjudicated neglected (750 ILCS 50/1(D)(m)(ii) (West 2022)). The relevant time periods alleged for K.C. and N.C. were July 14, 2022, to April 14, 2023, and April 15, 2023, to January 15, 2024. The relevant period alleged for B.C. was April 13, 2023, to January 13, 2024. The State also included Roselyn R., the minors' mother, in the petitions to terminate parental rights. (We note Roselyn R. is not a party to this appeal.)

¶ 10 B. Fitness Hearing

¶ 11 The trial court commenced the fitness hearing on September 25, 2024. After being properly admonished, and pursuant to respondent's stipulation, the court found respondent unfit in that he failed to make both reasonable efforts and reasonable progress toward the return of the minors to his care. (Respondent did not challenge the finding of unfitness on appeal.)

¶ 12 C. Best-Interest Hearing

¶ 13 The trial court proceeded immediately to the best-interest hearing. The best-interest report filed on September 25, 2024, noted K.C. and N.C. had been in foster care since July 2022 and B.C. had been in foster care since February 2024. The authors of the best-interest report indicated respondent was often present during visits with the minors; however, he was not actively engaged during the visits. Further, a permanency review hearing court report dated May 8, 2024,

noted, "The family remains without income; will be losing housing in July; and have demonstrated their inability to provide for the minors in relation to minimal parenting standards." According to the best-interest report, the minors were "extremely bonded" to the foster parents and their physical, mental, and emotional needs were being met by the foster parents.

¶ 14        Jennifer Walker testified she had been the minors' caseworker since September 23, 2023, and was the author of the best-interest report. Walker testified respondent never completed any drug drops, failed to maintain sustained sobriety, failed to undergo mental health counseling, and did not have suitable housing or income. With regard to the foster parents, Walker indicated N.C. and B.C. refer to them as " 'Mom and Dad.' " K.C. expressed her desire to remain with her foster parents. Walker noted K.C. had "more desire to see [respondent] than her mother." Walker further noted the foster parents were willing to provide permanency through adoption. On cross-examination, Walker indicated respondent's house was in the process of being foreclosed.

¶ 15        Respondent testified he was seasonally employed with a roofing company. With regard to housing, respondent indicated he applied for public housing, but nothing had been finalized yet. Respondent testified he had not obtained any mental health counseling or anger management treatment, as none had been recommended. Respondent admitted to having an alcohol problem but denied any drug problems. Respondent further testified he was well bonded with the minors.

¶ 16        Following arguments, and after considering the contents of the best- interest report and the evidence presented, the trial court found termination of respondent's parental rights was in the minors' best interest. The court emphasized the minors' need for permanency, noting their foster placement was "basically the only home [N.C. and B.C. have] ever known." K.C. was integrated into the foster family, community, and school. In their foster placement, the court

highlighted, the minors "have a home. They have support. They have income. They have a sense of attachment." Conversely, the court noted respondent's lack of permanent housing, stating, in light of the foreclosure proceedings, respondent's housing situation was "at best, speculative." The court concluded the minors deserved permanency and it was in their best interest that respondent's parental rights be terminated.

¶ 17 This consolidated appeal followed.

¶ 18 II. ANALYSIS

¶ 19 On appeal, respondent argues (1) the trial court's best-interest findings were against the manifest weight of the evidence, (2) termination of his parental rights was unconstitutional, and (3) he received ineffective assistance of counsel.

¶ 20 A. Best-Interest Findings

¶ 21 Respondent first argues the trial court's best-interest findings were against the manifest weight of the evidence.

¶ 22 When a trial court finds a parent to be unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *In re D.T.*, 212 Ill. 2d 347, 352 (2004). "[A]t a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364. The State must prove by a preponderance of the evidence that termination of parental rights is in the minors' best interest. *D.T.*, 212 Ill. 2d at 366. In making the best-interest determination, the court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2022)). These factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and

religious; (4) the child's sense of attachments, including love, security, familiarity, and continuity of affection, and the least-disruptive placement alternative; (5) the child's wishes; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009) (citing 705 ILCS 405/1-3(4.05) (West 2008)).

"The court's best interest determination [need not] contain an explicit reference to each of these factors, and a reviewing court need not rely on any basis used by the trial court below in affirming its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. "A reviewing court affords great deference to a trial court's best interest finding because the trial court is in a superior position to view the witnesses and judge their credibility." *In re J.B.*, 2019 IL App (4th) 190537, ¶ 33. On review, "[w]e will not disturb a court's finding that termination is in the children's best interest unless it was against the manifest weight of the evidence." *In re T.A.*, 359 Ill. App. 3d 953, 961 (2005). "A finding is against the manifest weight of the evidence only if the evidence clearly calls for the opposite finding [citation], such that no reasonable person could arrive at the [trial] court's finding on the basis of the evidence in the record." (Internal quotation marks omitted.) *In re J.H.*, 2020 IL App (4th) 200150, ¶ 68.

¶ 23        Here, the trial court's best-interest findings were not against the manifest weight of the evidence. The best-interest report recommended the termination of parental rights and reflected the minors were thriving in their relative foster placement. The minors were well bonded to their foster parents, and their physical and emotional needs were being met by their foster parents.

According to Walker, N.C. and B.C. referred to their foster parents as " 'Mom and Dad.' " The oldest child expressed a desire to stay with the foster parents. Moreover, K.C. had a sense of community in her current foster placement. The foster parents met the minors' basic needs for food, clothing, health care and shelter, and they provided for their physical safety and gave them a sense of belonging. The court noted that while respondent certainly "love[d] these children," ultimately, the minors deserved permanency, which their foster parents provided. All told, the evidence in the record supports the trial court's decision that terminating respondent's parental rights served the minors' best interest, meaning the decision is neither unreasonable nor arbitrary. See *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16.

¶ 24                    B. Constitutionality of Termination of Parental Rights

¶ 25            Respondent further argues the termination of his parental rights was not narrowly tailored to protecting the minors' welfare and is thus unconstitutional as applied to him. See U.S. Const., amend. XIV, § 1 (No state shall "deprive any person of life, liberty, or property, without due process of law."). Respondent acknowledges he has forfeited this argument on appeal because it was not raised before the trial court.

¶ 26            Our supreme court has long held "a parent's right to control the upbringing of his or her children is a fundamental constitutional right." *In re R.C.*, 195 Ill. 2d 291, 303 (2001) (citing *Troxel v. Granville*, 530 U.S. 57 (2000)). Under a strict scrutiny analysis, the reviewing court determines whether "the measures employed by the legislature [are] necessary to serve a compelling state interest, and [are] narrowly tailored thereto, *i.e.*, the legislature must use the least restrictive means consistent with the attainment of its goal." *In re D.W.*, 214 Ill. 2d 289, 310 (2005). "The standard of review for determining whether an individual's constitutional rights have been violated is *de novo*." *In re Robert S.*, 213 Ill. 2d 30, 45 (2004). Respondent does not dispute the

State has a compelling interest in protecting the welfare of children in general. *R.C.*, 195 Ill. 2d at 305.

¶ 27        In criminal cases, forfeited claims may be reviewed under the plain-error doctrine "where a clear and obvious error occurred" and (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Belknap*, 2014 IL 117094, ¶ 48. The plain-error doctrine can be applied in abuse and neglect cases. *In re Andrea D.*, 342 Ill. App. 3d 233, 242 (2003). "The first step of plain-error review is to determine whether error occurred," and "[t]he burden of persuasion rests with the defendant." *People v. Curry*, 2013 IL App (4th) 120724, ¶ 62.

¶ 28        Citing section 11-5 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/11-5 (West 2022)) respondent alleges, "There is nothing in the record to suggest that the guardianship would not have been just as effective in protecting the [minors] as these termination matters." He reasons a guardianship under the Probate Act "would also better respect [his] fundamental liberty interest by allowing him the hope of reuniting with [his children]." This argument ignores the fact that respondent stipulated to his own unfitness, as well as the inherent lack of permanency, which the Juvenile Court Act is designed to address. Indeed, after a finding of unfitness, "[t]he issue is no longer whether parental rights *can* be terminated; the issue is whether, in light of the child's needs, parental rights *should* be terminated." (Emphases in original.) *D.T.*, 212 Ill. 2d at 364. Thus, at the best-interest hearing, "the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364. The minor has a protected liberty interest in being raised in a " 'normal family home,' meaning" a " 'loving, stable

and safe home environment.' " *D.T.*, 212 Ill. 2d at 363. The Juvenile Court Act "establishes an elaborate and carefully tailored scheme to effect a balance between the constitutional rights of parents and the statutorily created rights of children to health, safety, and protection." *In re O.S.*, 364 Ill. App. 3d 628, 638 (2006). Further, respondent's rights were terminated after the best-interest hearing, at which respondent testified, thereby being afforded due process. Therefore, we find no constitutional violation and, thus, no error. Without a clear and obvious error, there can be no plain error. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 29                                    C. Ineffective Assistance of Counsel

¶ 30            Respondent finally argues his trial counsel was ineffective for failing to "raise a constitutional challenge by suggesting that a guardianship or other less destructive process was appropriate."

¶ 31            Under section 1-5(1) of the Juvenile Court Act (705 ILCS 405/1-5(1) (West 2022)), minors and their parents in juvenile proceedings have the right to effective assistance of counsel. *In re Abel C.*, 2013 IL App (2d) 130263, ¶ 12. Even though this right is statutory rather than constitutional, Illinois courts nevertheless gauge the effectiveness of counsel in juvenile proceedings by applying the constitutional standard from criminal law, specifically, the standard in *Strickland v. Washington*, 466 U.S. 668 (1984). *In re Ch. W.*, 399 Ill. App. 3d 825, 828 (2010). Under *Strickland*, a party alleging ineffective assistance must prove two propositions: (1) "counsel's representation fell below an objective standard of reasonableness" (*Strickland*, 466 U.S. at 688) and (2) there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (*Strickland*, 466 U.S. at 694). "A defendant must satisfy both prongs of the *Strickland* test." *People v. Evans*, 186 Ill. 2d 83, 94 (1999). "However, if the ineffective-assistance claim can be disposed of on the ground that the defendant

did not suffer prejudice, a court need not decide whether counsel's performance was constitutionally deficient." *Evans*, 186 Ill. 2d at 94.

¶ 32 As discussed, this claim was without merit. Therefore, respondent was not prejudiced by trial counsel's failure to preserve a meritless claim. *Evans*, 186 Ill. 2d at 94.

¶ 33 III. CONCLUSION

¶ 34 For the reasons stated, we affirm the trial court's judgment.

¶ 35 Affirmed.