2026 IL App (2d) 240558-U
No. 2-24-0558
Order filed May 29, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v. ANTHONY J. STEWARD, Defendant-Appellant.

Appeal from the Circuit Court of Lake County.
Honorable David C. Lombardo, Judge, Presiding.
No. 24-CF-671

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The evidence was insufficient to sustain defendant's domestic battery conviction; however, the evidence was sufficient to sustain defendant's convictions for violating an order of protection on April 1, 2024, and April 2, 2024. Trial counsel was not ineffective for failing to object to the use of inadmissible hearsay or for failing to object to the circuit court's finding that defendant was extended-term eligible. Affirmed in part and vacated in part.

¶ 2    Following a jury trial, defendant, Anthony J. Steward, was found guilty of four counts of violating an order of protection, as to two different dates (720 ILCS 5/12-3.4(a)(1) (West 2024)), and one count of domestic battery (*id*. § 12-3.2(a)(1) (bodily harm)), all involving his girlfriend, Javata Hopes ("Hopes"). Defendant argues on appeal that his counsel provided ineffective assistance by failing to object to the use of inadmissible hearsay, which resulted in his convictions. Defendant asserts that he was not proven guilty of violating an order of protection or domestic

battery beyond a reasonable doubt. Finally, defendant argues that his counsel was ineffective for failing to object to the circuit court's finding that he was extended-term eligible. We vacate in part and affirm in part.

¶ 3                                  I. BACKGROUND

¶ 4     Defendant was charged in a six-count indictment. In counts I and II, defendant was charged with violating an order of protection against Hopes on April 1, 2024, in that he was within 500 feet of her or had contact with her and had previously been convicted of violating an order of protection. *Id*. § 12-3.4(a)(1). In counts III and IV, defendant was charged with violating an order of protection against Hopes on April 2, 2024, in that he was within 500 feet of her or had contact with her and had previously been convicted of violating an order of protection. *Id*. In count V, defendant was charged with felony domestic battery for causing bodily harm to Hopes on April 2, 2024, after having a prior conviction for violating an order of protection. *Id*. § 12-3.2(a)(1). Finally, in count VI, defendant was charged with domestic battery for making physical contact with Hopes on April 2, 2024, after having a prior conviction for violating an order of protection. *Id*.

¶ 5     Leading up to trial, the State filed a motion for a body attachment against Hopes and a motion *in limine* seeking the admission of Hopes' hearsay statements pursuant to the forfeiture-by-wrongdoing exception. Subsequently, defendant warned Hopes during a recorded call about the impending body attachment and that police would be looking for her in Zion, specifically at "2116" (Hopes' house number). Ultimately, the State abandoned the motion *in limine* after Hopes was taken into custody, pursuant to the body attachment.

¶ 6     Defendant's jury trial began on June 20, 2024. The State asked to *nolle prosequi* count VI (domestic battery - physical contact), and the court granted the request. At trial, the evidence showed that, on March 25, 2024, Hopes obtained an emergency order of protection against

defendant. The order was set to expire April 10, 2024, and prohibited defendant from harassing, abusing, stalking, intimidating, or interfering with Hopes or her personal liberty. Moreover, the order stated that defendant was to stay at least 500 feet away from Hopes at all times and not have any direct or indirect communication with her, including communication on social media or through third parties. He was also prohibited from visiting Hopes' residence or any of Hopes' children's schools.

¶ 7    Officer Shazay Molleda testified that, on March 27, 2024, she gave defendant a short form notification of the unserved order of protection, and she retained a carbon copy of the notice. Within the form, defendant was notified that, in case No. 24-OP-707, an emergency order of protection was entered against him, and he was prohibited from entering Hopes' residence and visiting "Lakeview/Elmwood" and "Zion-Benton Tech" (listed in the order of protection as Hopes' children's schools). The order also stated that defendant was to "[s]tay away from petitioner and protected persons at additional locations." In the "Civil No Contact Order" box, Molleda did not check the box stating, "You must stay at least _____ feet from petitioner and protected persons. You are prohibited from coming to _____." Molleda testified that the form instructed defendant to obtain a copy of the order of protection for a full list of his restrictions. The carbon copy of the short form notice given to defendant did not list instructions for obtaining the complete order of protection.

¶ 8    Officer Haley Pacholsky testified that, on April 1, 2024, she responded to a call for an unwanted subject at the Holiday Inn in Zion. Upon arrival, she saw Hopes and defendant within proximity of one another—approximately two parking spaces apart (under 100 feet of one another) in the Holiday Inn parking lot. Once police discovered the active order of protection, defendant

- 3 -

was taken into custody. During the arrest, defendant uttered "stuff" towards Hopes, including telling her to be quiet and to pick him up at the police station.

¶ 9     Hopes testified that she obtained an order of protection against defendant on March 25, 2024. She and defendant had been in an on-again-off-again relationship for about 10 years. On April 1, 2024, defendant picked Hopes up and gave her a ride to the Holiday Inn. Holiday Inn staff called police, after attempting to kick out Hopes and defendant. She recalled that defendant was arrested at the Holiday Inn, and she was given his car keys after his arrest. Hopes did not recall if defendant asked her to pick him up from the police station.

¶ 10    Hopes testified that she may have called the police again, after 1 a.m. on April 2, 2024—"I mean from the video it shows I did, obviously." Police responded to Hopes' house, and, based on the video, she agreed she spoke to officers, and that her friend, Darion Timmins, arrived while police were questioning her.

¶ 11    Regarding the April 2 encounter with defendant, Hopes did not recall if defendant came to her house after he was released from jail. She stated, "if you look at that video, I almost fell and everything. I was highly intoxicated. That don't even look like me in that video." She also indicated, "I don't even recognize myself." Hopes explained that, prior to trial, she had watched body-camera footage of her statements to police, but she did not independently recall interacting with defendant or speaking to police. When asked if defendant came to her house, Hopes responded that she only remembered saying, "I'm sorry. I'm sorry" to police, but, if the video reflected that she said defendant was present, then "yes" he must have been. Hopes noted that, if the video reflected that she stated that defendant was outside the car, hit her with a closed fist and yelled at her, and she fought him, then she must have made those statements; however, she did not recall making those statements. When asked at trial whether Hopes stated that defendant would

not stay away from her, unless she made him, she testified that this did not "sound like nothing *[sic]* I'd say, but if the video shows I said it, yes." The body-camera video also purportedly reflected Hopes' statements that defendant hit her twice; however, she testified that she did not remember the events of that night, but, if the video showed that she said defendant hit her twice, then that must be what she said.

¶ 12    As to any injury, Hopes testified that she was "pretty drunk," but she "guessed" she had an injury on her arm and appeared to be crying in the video. She stated that she was so inebriated that she did not know why she was crying. Regarding an injury to her eye, Hopes stated that she has had black eyes for years, and, even at trial, she pointed out that it looked like she had two black eyes, despite her make-up.

¶ 13    On cross-examination, Hopes agreed that Timmins was waiting outside of her house, while she spoke to police, and she had been with Timmins before defendant was arrested. She also agreed that she told police that an encounter with defendant occurred in a car, outside her house, and defendant was in the passenger seat while she was in the driver's seat.

¶ 14    Next, Officer Scott Ray testified that he responded to the Holiday Inn on April 1, 2024, as defendant was taken into custody. Ray spoke to Hopes at the scene. He did not note any injuries on Hopes at this time. Ray later responded to the domestic violence call at Hopes' residence in the early hours of April 2, 2024. Ray noted that Hopes obtained injuries—a swollen left eye and had bruising on her left arm. Ray indicated that Hopes seemed sad, scared, upset, and was intoxicated during their interaction. He did not see defendant at Hopes' residence; however, he did see Timmins arrive, while speaking with Hopes. Ray did not question Timmins that night nor follow up with him regarding Hopes' encounter, or whether Timmins witnessed any altercation. Instead, Ray left the scene. Police located defendant shortly before 8 a.m.

¶ 15    The State moved to admit, as a prior inconsistent statement, Ray's body-camera interview of Hopes at the scene. The court denied the motion, as it found that its interpretation of Hopes' testimony—"I was very intoxicated, I have no memory, but I saw the video, and I said every one of those things"—was not inconsistent with the video footage. Ultimately, only an 11-second clip of the body-camera footage was admitted for the limited purpose of showing Hopes' demeanor and level of intoxication.

¶ 16    Thereafter, defendant's prior convictions for domestic battery were admitted. Defendant then moved for a directed verdict, which was denied. Defendant rested.

¶ 17    During deliberations, the jury asked, "Where is the arrow? What is *[sic]* the back of the short form say?" The court responded that the jury had all the evidence submitted in the case. Thereafter, the jury found defendant guilty of counts I through V.

¶ 18    On July 30, 2024, defendant filed a posttrial motion, alleging, *inter alia*, that the court erred in admitting a portion of Officer Ray's body-camera footage, that the State failed to show that defendant had actual knowledge of the order of protection, and that the State failed to present sufficient evidence that defendant battered Hopes on April 2, 2024.

¶ 19    On September 30, 2024, the court held a combined sentencing hearing and hearing on the motion. The court denied defendant's motion. The court found that defendant was extended-term eligible and sentenced him to two concurrent five-year terms of imprisonment for violation of an order of protection in counts II and IV. Additionally, defendant was sentenced to another concurrent five-year term of imprisonment for domestic battery in count V.

¶ 20    On September 19, 2024, defendant filed a motion to reconsider sentence. That same day, the court denied defendant's motion. Defendant timely appealed.

¶ 21                                        II. ANALYSIS

¶ 22     On appeal, defendant argues that (1) trial counsel was ineffective for failing to object to the use of Hopes' statements as substantive evidence, where her statements were inadmissible hearsay; (2) the State failed to prove him guilty of violating an order of protection (count IV) and domestic battery (count V) beyond a reasonable doubt; (3) the State failed to prove him guilty of violating an order of protection (count II) beyond a reasonable doubt; and (4) trial counsel was ineffective for failing to object to the court's finding that he was extended-term eligible. In response, the State asserts that this court does not have jurisdiction to consider the judgments as to counts I and III, as those were not final judgments, and any claim regarding the sufficiency of the evidence as to those counts was forfeited because it was not adequately addressed in defendant's opening brief. Moreover, the State argues that the evidence was sufficient to sustain all defendant's convictions, and defendant's counsel was not ineffective. For the following reasons, we vacate defendant's conviction and concurrent sentence for domestic battery (count V), affirm the remainder of defendant's convictions and sentences, and conclude that trial counsel was not ineffective.

¶ 23                          A. Jurisdiction and Forfeiture

¶ 24     As an initial matter, the State notes that defendant argued in two footnotes that it failed to prove him guilty beyond a reasonable doubt in count I (violating an order of protection, merged with count II) and count III (violating an order of protection, merged with count IV). It contends that these claims are forfeited because they have not been sufficiently argued, and these claims are not reviewable because they are not final judgments. We agree that the sufficiency of the evidence cannot be addressed because there are no final judgments as to these counts. Accordingly, we need not address the State's forfeiture argument.

¶ 25     Article VI, section 6 of the Illinois Constitution grants the appellate court jurisdiction over final judgments of the circuit court. Ill. Const. 1970, art. VI, § 6. "The final judgment in a criminal

case is the sentence, and, in the absence of the imposition of a sentence, an appeal cannot be entertained." *People v. Caballero*, 102 Ill. 2d 23, 51 (1984). See also *People v. Relerford*, 2017 IL 121094, ¶ 71; *People v. Salem*, 2016 IL 118693, ¶ 12. Where a circuit court fails to impose a sentence on a conviction, "it does not follow that the conviction must be vacated. It simply means that there can be no appeal of it." *People v. Flores*, 128 Ill. 2d 66, 95 (1989).

¶ 26    Here, defendant's convictions for violating an order of protection, in counts I and III, are not final judgments because the court did not impose a sentence on either of these counts. Rather, these counts merged into counts II and IV, respectively. Accordingly, we lack jurisdiction to consider the sufficiency of the evidence regarding counts I and III.

¶ 27                    B. Ineffective Assistance of Counsel—Prior Statements

¶ 28    As to the merits, defendant asserts that trial counsel rendered ineffective assistance, where he failed to object to the use of Hopes' prior statements as substantive evidence, and those statements were otherwise inadmissible hearsay. In response, the State argues that it was trial strategy to fail to object to Hopes' statements regarding the April 2 body-camera footage, and trial counsel was not ineffective because the statements were admissible pursuant to section 115-10.2a of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10.1 (West 2024)), as a prior inconsistent statement (725 ILCS 5/11-10.1 (West 2024)), and through forfeiture by wrongdoing (Ill. R. Evid. 804(b)(5) (eff. Jan 1, 2011)). Overall, we conclude that counsel was not ineffective, as Hopes' out-of-court statements were admissible as prior inconsistent statements.

¶ 29    We review *de novo* defendant's ineffective-assistance-of-counsel claim. *People v. Brown*, 2024 IL 129585, ¶ 29. The United States and Illinois constitutions guarantee effective assistance of counsel for criminal defendants. U.S. Const., amends. VI, VIX; Ill. Const. 1970, art. I, § 8; see, *e.g.*, *Strickland v. Washington*, 466 U.S. 668 (1984); *People v. Moore*, 2020 IL 124538, ¶ 28. To

sustain a claim of ineffective assistance, "a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Domagala*, 2013 IL 113688, ¶ 36 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *People v. Houston*, 229 Ill. 2d 1, 4 (2008). Because a defendant must satisfy both prongs in order to prevail, courts need not "address both [prongs] of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697; *People v. Evans*, 186 Ill. 2d 83, 94 (1999).

¶ 30    Here, the State asserts that Hopes' out-of-court statements, referencing the body-camera footage, were admissible as prior inconsistent statements. A hearsay statement is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ill. R. Evid. 801(c) (eff. Oct. 15, 2015). Hearsay is, generally, inadmissible. Ill. R. Evid. 802 (eff. Jan. 1, 2011). However, section 115-10.1 of the Code provides for an exception to the general rule that hearsay is inadmissible as substantive evidence. See 725 ILCS 5/115-10.1 (West 2024). Section 115-10.1 provides that a party may introduce a witness' prior inconsistent statement as substantive evidence if (1) the statement is inconsistent with the witness' trial testimony; (2) the witness is subject to cross-examination concerning the statement; (3) the statement "narrates, describes, or explains an event or condition of which the witness had personal knowledge;" and (4) the statement "is proved to have been accurately recorded by a tape recorder, videotape recording, or any other similar electronic means of sound recording." *Id.*

¶ 31    Here, defendant argues only that Hopes' recorded statements were not directly contrary to her testimony. It is uncontroverted that Hopes was present and subject to cross-examination regarding her out-of-court statements at defendant's trial; her out-of-court statements narrate an occurrence for which she had personal knowledge; and her out-of-court statements, recorded on police body-camera video, were accurately recorded. Accordingly, we address only whether Hopes' out-of-court statements were inconsistent with her trial testimony.

¶ 32    While section 115-10.1 requires a witness' prior statement be inconsistent with his or her trial testimony, the out-of-court statement need not *directly* contradict the witness' trial testimony to qualify as "inconsistent." *People v. Flores*, 128 Ill. 2d 66, 87-88 (1989). Inconsistent testimony also includes evasive answers, silence, or changes in position. *People v. Martin*, 408 Ill. App. 3d 891, 895 (2011). For example, in *Flores*, the supreme court found the circuit court did not abuse its discretion, where it determined the witness' "professed memory loss" on the stand was inconsistent with his prior testimony. *Flores*, 128 Ill. 2d at 87-88 ("where a witness now claims to be unable to recollect a matter, a former affirmation of it should be admitted as a contradiction" (internal quotation marks omitted)). " 'One of the policies underlying section 115-10.1 of the Code is to protect parties from 'turncoat' witnesses who back away from a former statement made under circumstances indicating that it was likely to be true.' " *Martin*, 408 Ill. App. 3d at 895 (quoting *People v. Tracewski*, 399 Ill. App. 3d 1160, 1165 (2010)).

¶ 33    Here, Hopes' testimony was inconsistent with her purported statements made in body-camera video. Hopes testified that police responded to her house on April 2, 2024, and she believed she discussed with them an encounter that had occurred with defendant. She acknowledged that her interactions with police that night were recorded, and she was depicted in the video. However, during her direct examination, she repeatedly maintained that she did not recall any domestic

incident with defendant at her house on April 2, 2024, as she was "highly intoxicated," to the point where she "almost fell" and she did not "even recognize [her]self." Further, on direct examination, Hopes testified that she did not independently recall providing statements to police on April 2, 2024; she simply agreed that, if the video showed her making a statement, then she must have made that statement—"If that's what I said. If that's what the video shows. I said I don't remember that night."

¶ 34 Nonetheless, despite Hopes' lapse in memory during most of the State's direct examination, she remembered significantly more during cross-examination. For example, she remembered that, while she spoke to police, Timmins was waiting outside of her house; she was with Timmins before defendant was arrested; she told police that the incident with defendant occurred in a car, outside her house; and defendant was in the passenger seat of the car, and she was in the driver's seat. All this information together leads us to conclude that Hopes' direct examination testimony was inconsistent with her out-of-court statements, as her statements were, at best, evasive, and, despite defendant's argument to the contrary, likely the result of professed memory loss. When we consider Hopes' testimony in context, it reinforces our decision. Here, Hopes had been taken into custody on a body attachment because initial attempts at personal service were incomplete, Hopes disputed the additional attempt at service made on her daughter, and Hopes failed to appear, initially, on June 17, 2024. Accordingly, we conclude that Hopes' out-of-court statements were admissible as an exception to the hearsay rule. See *Flores*, 128 Ill. 2d at 88 (finding a witness' professed memory loss was sufficient to establish inconsistency for purposes of section 115-10.1 of the Code).

¶ 35 As Hopes' statements were admissible as prior inconsistent statements, defense counsel's performance was not deficient for failing to object to them as substantive evidence. Accordingly, we need not address defendant's prejudice argument. *Evans*, 186 Ill. 2d at 94. Further, as we find

that Hopes' statements were admissible as prior inconsistent statements, we need not address the remainder of the State's arguments as to admissibility.

¶ 36                    C. Sufficiency of the Evidence—Counts IV and V

¶ 37    Defendant next asserts that he was not proven guilty beyond a reasonable doubt of violating an order of protection (count IV) and domestic battery (count V) on April 2, 2024, because Hopes' statements were insufficient to show defendant's alleged actions occurred. In response, the State asserts that Hopes never renounced her statements that defendant was present at her home and hit her on April 2, 2024; rather, she just did not recall making those statements. We agree with defendant that the evidence was insufficient to sustain his domestic battery (count V) conviction; however, we find it was sufficient to convict defendant of violating an order of protection (count IV).

¶ 38    In reviewing a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard of review applies to all criminal cases, regardless of the nature of the evidence—direct or circumstantial—and provides deference to the factfinder's resolution of any conflicts based on the testimony, determination of the weight of the evidence, and ability to draw reasonable inferences. *People v. McLaurin*, 2020 IL 124563, ¶ 22.  Thus, we will not retry the defendant or substitute our judgment for that of the trier of fact. *Id.*

¶ 39    Nonetheless, we will not simply rubber stamp the factfinder's assessment of the evidence. *People v. Hernandez*, 312 Ill. App. 3d 1032, 1037 (2000). We will reverse a decision where the

evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt. *Id.*

¶ 40    A person commits the offense of violating an order of protection, where he or she (1) knowingly commits an act prohibited by a valid order of protection or fails to commit an act ordered by an order of protection, and (2) such act occurs after the defendant has been served notice of the contents of the order or otherwise has acquired knowledge of the contents of the order. 720 ILCS 5/12-3.4(a) (West 2024). Here, notice of the order of protection on April 2, 2024, is not at issue, as defendant was arrested hours prior for the same offense.

¶ 41    Additionally, a defendant is guilty of felony domestic battery if he or she knowingly and without legal justification causes bodily harm to a family or household member and has a prior conviction for violating an order of protection. *Id.* § 12-3.2(a)(1), (b). Defendant's prior conviction for violating an order of protection is not contested here.

¶ 42    In this case, the evidence, viewed in the light most favorable to the State, was sufficient to show that defendant knowingly violated an order of protection, but insufficient to show that defendant knowingly caused bodily harm to Hopes on April 2, 2024. On direct examination, Hopes testified that she had been in an on-and-off-again relationship with defendant for 10 years. She obtained an order of protection against defendant on March 25, 2024. She was with defendant on April 1, 2024, when he was arrested for violating her order of protection.

¶ 43    As to the events of April 2, 2024, Hopes testified that she watched police body-camera footage of her interactions with police after they were "apparently" called. Hopes stated, on direct examination, that she did not independently recall her statements to police, as she was "highly intoxicated." Hopes testified that, based on the video, she spoke to two male police officers and told them defendant came to her house. Hopes only recalled that she kept apologizing to the

officers. She reiterated that she did not remember telling officers that defendant did not enter her apartment; rather, he approached her in a car. However, she agreed that, if the body-camera footage reflected her saying that, then that must be what she stated. Hopes testified that she did not remember defendant hitting her eye and striking her twice, defendant fighting with her, or defendant yelling at her in the car, but, if the body-camera footage reflected her stating that, then that must be what she told police had happened. In an attempt to confirm her videoed statements, the prosecutor asked Hopes if it was correct that, "[Defendant] only struck you twice? [Hopes'] response: I -- and I -- well, only twice that I remember." Hopes responded in court by stating, "If that's what I said. If that's what the video shows. I said I don't remember that night."

¶ 44 During Hopes' cross-examination, however, she testified that she spoke to police on April 2, 2024, after an incident occurred outside her house. While speaking with police, Timmins was outside of her house. Hopes stated that she was with Timmins prior to defendant being locked up. During the incident for which police were called on April 2, Hopes agreed without qualification that she was in the driver's seat of a car and defendant was in the passenger seat. However, when asked, "And you told police on April 2 that [defendant] had hit you multiple times, right?", Hopes stated, "From the video, yes."

¶ 45 The complete body-camera footage of Hopes' interview with police was not admitted for the truth of the matter asserted, and the contents of the video were never stipulated to. The remaining evidence tended to show that, on April 1, 2024, no injuries were noted on Hopes. However, later, on April 2, 2024, officer Ray noticed Hopes' eye was swollen shut and had bruising on her left arm.

¶ 46 Based on the foregoing evidence, viewed in the light most favorable to the State, there was sufficient testimonial evidence to convict defendant for violating an order of protection (count IV).

Hopes' statements on cross-examination reflected that she was with defendant on April 2, 2024—she agreed that an incident occurred outside her house, where she was in the driver's seat of a car and defendant was in the passenger seat of the same car. Hopes did not qualify that these statements were based on her review of the body-camera footage. Defendant's presence outside Hopes' residence in a car with her are acts in violation of the order of protection, after he knew the order of protection existed because of his arrest hours earlier. This supports his April 2, 2024, conviction for violation of an order of protection. *People v. Taher*, 329 Ill. App. 3d 1007, 1018 (2002) (sustaining a defendant's conviction for domestic battery based solely on the victim's testimony).

¶ 47    As to domestic battery, viewed in the light most favorable to the State, the circumstantial evidence was insufficient to convict defendant. While there is sufficient evidence to support that there was contact between Hopes and defendant outside of Hopes' house, and that, at some point, Hopes obtained injuries, there is no evidence to support that defendant knowingly, and without legal justification, caused any injury to Hopes. The 11-second clip of Hopes from body-camera footage, was not admitted for the truth of the matter asserted, but only to show her level of intoxication and her demeanor. Hopes' unqualified statements, attributable to her on cross-examination, do not reflect that defendant harmed her. Rather, her statements only showed that the parties were together in a car.

¶ 48    Additionally, Hopes did not testify that the body-camera video showed her making incriminating statements against defendant. Rather, Hopes qualified her direct-examination testimony by stating that *if* the video showed her making a statement, *then* that statement must be true. However, without the video to substantiate her testimony, Hopes testimony has virtually no substantive value, as there is no evidence to support that Hopes actually made the statements in the body-camera footage. At the point when Hopes testified, there was no evidence of the contents

of the body-camera recording, and, ultimately, none of the body-camera footage was admitted for the truth of the matter asserted, nor were the contents of the video stipulated to. Instead, all of Hopes' statements about the *cause* of her injuries were qualified—she did not recall speaking to police; however, *if* the body-camera footage showed her making statements implicating defendant, *then* she must have made those statements. Without the admission of the relevant portions of the body-camera footage or a stipulation regarding the contents of the video, we cannot speculate as to what Hopes actually said on April 2, especially where she did not unconditionally admit that she made statements incriminating defendant. Accordingly, as there was no direct or indirect evidence supporting that defendant knowingly, and without legal justification, caused Hopes' injuries, we reverse his conviction for domestic battery (count V) and vacate the concurrent sentence.

¶ 49                    D. Sufficiency of the Evidence—Count II

¶ 50    Next, defendant contends that he was not proven guilty beyond a reasonable doubt of violating the order of protection from April 1, 2024 (count II), because there was insufficient evidence to show that he had actual knowledge of the contents of the order of protection.

¶ 51    One commits the offense of violating an order of protection if: (1) he or she knowingly commits an act prohibited by a valid order of protection or fails to commit an act ordered by an order of protection, and (2) such act occurs after the defendant has been served notice of the contents of the order or otherwise has acquired knowledge of the contents of the order. 720 ILCS 5/12-3.4(a) (West 2024). "[A] verbatim reading of the entire contents of the order of protection is not necessary in order to put the defendant on notice of what conduct is prohibited." *Ramos*, 316 Ill. App. 3d at 23. If the legislature intended that the defendant be informed of the entire contents of the order, then the statute would require that a defendant be served with a copy of the order of

protection, rather than a short form notice, before he or she could be charged with committing a violation of the order. *Id.* However, a defendant must have "knowledge of the provisions of the order that he is charged with violating." *People v. Brzowski*, 2015 IL App (3d) 120376, ¶ 31.

¶ 52    Here, defendant was aware and notified of the contents of the order of protection entered against him on March 25, 2024. On March 27, 2024, defendant was provided a short form notice of the order of protection. The notification informed defendant that Hopes' children's schools were protected addresses, he was not to enter Hopes' residence, and he was required to "[s]tay away from [Hopes] and protected persons at additional locations." However, defendant asserts that the inclusion of "at additional locations" within the stay-way provision creates an ambiguity and should not be read as "at *all* additional locations." Rather, defendant argues that the additional-locations provision should only apply to the protected addresses otherwise listed in the short form notice.

¶ 53    Despite defendant's assertion that the order's stay-away provision should be limited to the protected addresses, we do not read this provision so restrictively. The short form notice specifically lists, as protected locations, Hopes' residence and the addresses of her children's schools. The provision that defendant should stay away from the petitioner and the protected persons at additional locations certainly includes, but *is not limited to*, the protected addresses. If that were the case, the provision would simply order defendant to stay away from the protected address(es). Moreover, additional means: "That is in addition to something else; added, extra, supplementary." Additional, Oxford English Dictionary, https://www.oed.com/dictionary/additional_adj?tab=meaning_and_use (last visited Mar. 26, 2026). *Cf. Khan v. Deutsche Bank* AG, 2012 IL 112219, ¶¶ 75-76 (also noting, "[w]here a term is undefined, we presume that the legislature intended the term to have its popularly understood meaning"). Meaning, the additional

locations defendant was ordered stay away from are locations *in excess of* the ones already listed in the short form notice. Because the stay-away provision does not limit the form or number of additional locations, it can be inferred that defendant was directed to stay away from Hopes and her children at *all* additional locations, including those specifically listed in the notification. Accordingly, where, as here, defendant was provided with a short form notice that complied with the statute, he received adequate notice of the order of protection and its contents. Thus, defendant's challenge to the sufficiency of the evidence as to count II fails.

¶ 54                            E. Extended-Term Eligible

¶ 55    Finally, citing *Erlinger v. United States*, 602 U.S. 821 (2024), defendant argues that trial counsel was ineffective for failing to object to the court's finding he was extended-term eligible, in violation of his sixth amendment right to a jury trial. The State asserts that this court has already found this claim is meritless in *People v. Holman*, 2025 IL App (2d) 240513. We agree with the State, as we can dispose of defendant's claim on the deficiency prong alone. See *Evans*, 186 Ill. 2d 83, 94 (1999).

¶ 56    Based on defendant's convictions for domestic battery within the last 10 years in case Nos. 16-CF-2868 and 19-CF-1419, the circuit court found defendant eligible for an extended-term sentence under section 5-5-3.2(b)(1) of the Unified Code of Corrections (730 ILCS 5/5-5-3.2(b)(1) (West 2024)). To be extended-term eligible under this section, the defendant must have been convicted of the same, similar, or greater class of felony within the last 10 years, excluding time spent in custody. *Id.* Defendant argues that his counsel was deficient for failing to object to his extended-term sentencing, where the question of whether defendant's prior convictions occurred within the last 10 years was not presented to the jury, yet these convictions were used to enhance his sentencing range. He asserts that *Erlinger* holds that all factual inquiries, other than the fact of

a prior conviction alone, that provide for an increased sentence must be found by a jury beyond a reasonable doubt. *Erlinger*, 602 U.S. at 840; *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

¶ 57    As the State correctly notes, we considered this exact inquiry in *Holman* and concluded that *Erlinger* is distinguishable. See *Holman*, 2025 IL App (2d) 240513, ¶¶ 44-46. In *Erlinger*, the Supreme Court considered whether the defendant was eligible for an enhanced sentence under a preponderance-of-the-evidence standard because his prior offenses were committed on three separate occasions, or whether this fact needed to be found by a jury beyond a reasonable doubt. See 18 U.S.C. § 924(e)(1) (2012); *Erlinger*, 602 U.S. at 825. Ultimately, the court found that the separate-occasions analysis was fact laden, and, thus, needed to be presented to a jury and found beyond a reasonable doubt. *Erlinger*, 602 U.S. at 835. In *Holman*, we held that *Erlinger* did not apply when considering section 5-5-3.2(b)(1) and the 10-year analysis. *Holman*, 2025 IL App (2d) 240513, ¶ 46. We found that the 10-year inquiry was much simpler in *Holman* and that it could be readily discernible from public records. *Id.* Moreover, we noted that section 5-5-3.2(b)(1) has repeatedly been held constitutional under *Apprendi*. *Id.* We will not depart from the analysis of *Holman*.

¶ 58    In sum, counsel did not err by failing to object to the imposition of extended-term sentencing. Accordingly, counsel's performance was not deficient, and, thus, defendant did not receive ineffective assistance of counsel.

¶ 59                                   III. CONCLUSION

¶ 60    For the reasons stated, we vacate defendant's conviction and concurrent sentence for domestic battery (count V), affirm the remainder of defendant's convictions and sentences, and conclude that counsel was not ineffective.

¶ 61    Affirmed in part and vacated in part.